UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**JAMES J. MCDANIEL**                                        **CIVIL ACTION**

**VERSUS**                                                   **NO. 15-5845**

**NATIONAL RAILROAD PASSENGER**                              **SECTION: "G"(1)**
**CORPORATION, D/B/A "AMTRAK"**

<u>ORDER</u>

      In this litigation, Plaintiff James McDaniel ("McDaniel") alleges that he was discriminated against on the basis of age, race, and/or gender by his employer, Defendant National Railroad Passenger Corporation, d/b/a "Amtrak" ("Amtrak"), in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), and Louisiana state law.[1] McDaniel also alleges that he was retaliated against by Amtrak for filing an internal complaint with Amtrak and a complaint of discrimination with the Equal Employment Opportunity Commission ("EEOC") in violation of Title VII and Louisiana state law.[2] Pending before the Court are Amtrak's "Motion for Summary Judgment"[3] and "Motion to Strike Plaintiff's Statement of Disputed Material Facts."[4] Having considered the pending motions, the memoranda in support and in opposition, the record, and the applicable law, the Court will deny Amtrak's "Motion to

---

[1] Rec. Doc. 1 at 7–11.

[2] *Id.* at 9–10.

[3] Rec. Doc. 41.

[4] Rec. Doc. 56.

1

Strike Plaintiff's Statement of Disputed Material Facts"[5] and grant Amtrak's "Motion for Summary Judgment."[6]

## I. Background

### A.    *Factual Background*

McDaniel, a white male born on February 15, 1955, has been employed by Amtrak since 1988.[7] In 2006, McDaniel was promoted to the position of Assistant Superintendent, Passenger Services, of the Southern Division ("Assistant Superintendent").[8] According to McDaniel, at some time prior to December 2, 2013, Amtrak decided to implement a reduction in force ("2013 RIF") in order to eliminate certain management positions, including McDaniel's Assistant Superintendent position.[9] Simultaneously, Amtrak created a new position of Route Director in New Orleans ("Route Director"), a position which McDaniel alleges had substantially similar but fewer duties and responsibilities as his former Assistant Superintendent position.[10]

Upon learning of the intention to eliminate his position, McDaniel states that he applied for the newly created position of Route Director, but the position was awarded to Anella Popo ("Popo") instead.[11] McDaniel avers that Popo was a 42-year-old African American female who had worked for Amtrak for less than fourteen years at the time of her selection.[12] McDaniel alleges

---

[5] Rec. Doc. 56.

[6] Rec. Doc. 41.

[7] Rec. Doc. 1 at 2.

[8] *Id.*

[9] *Id.*

[10] *Id.* at 2–3.

[11] *Id.* at 3.

[12] *Id.*

that he was more qualified for the position than Popo "based on his depth of experience, knowledge, past positions with the company, performance, and temperament."[13]

McDaniel further argues that he applied and was not selected for at least five more positions prior to his position being eliminated.[14] Instead, McDaniel asserts that four of the individuals selected were African-American females, and three were "significantly younger" than McDaniel.[15] On December 2, 2013, McDaniel, who was 58 years old at the time, was terminated from management pursuant to the 2013 RIF.[16] Following his termination, McDaniel "exercised his Union craft seniority that entitled him to a non-management position," and was assigned to a non-management position at Amtrak with substantially less compensation and benefits.[17]

On December 23, 2013, McDaniel sent Amtrak an internal complaint of discrimination concerning his non-selection for Route Manager and the other five positions for which he applied.[18] McDaniel avers that the average age of those affected by the 2013 RIF was 57.3 years old.[19] On August 20, 2014, Amtrak sent a letter to McDaniel, in which, according to McDaniel, Amtrak stated that its "investigation did not uncover credible evidence to support Mr. McDaniel's claims of unfair treatment based on race, gender, or age."[20] McDaniel further alleges that he continued to apply for Amtrak management positions after filing his internal Amtrak complaint

---

[13] *Id.*

[14] *Id.*

[15] *Id.* at 4.

[16] *Id.*

[17] *Id.*

[18] *Id.* at 5.

[19] *Id.*

[20] *Id.* at 5–6.

and an EEOC complaint, but that he was not selected for those positions.[21] McDaniel contends

that he was not selected for those positions in retaliation for his complaints of discrimination and/or

on the basis of his age, race, and/or gender.[22]

**B.    *Procedural Background***

On June 18, 2014, McDaniel filed a Charge of Discrimination with the EEOC.[23] On

October 7, 2015, McDaniel filed a second Charge of Discrimination with the EEOC regarding his

non-selection for other positions that occurred after he filed his first EEOC complaint.[24] On

September 17, 2015, the EEOC issued Notices of Right to Sue in connection with McDaniel's two

Charges of Discrimination.[25]

On November 12, 2015, McDaniel filed his Complaint against Amtrak.[26] McDaniel also

alleged Amtrak engaged in intentional discrimination on the basis of race and/or gender, age

discrimination, and retaliation in violation of Louisiana state law.[27] The case was originally

assigned to Section "C" of the Eastern District of Louisiana.[28] After the Court granted Amtrak

additional time to respond to the Complaint,[29] Amtrak filed an Answer on December 30, 2015.[30]

---

[21] *Id.* at 6.

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.* at 8–10.

[27] *Id.* at 11 (citing La. Rev. Stat. §§ 23:332, 23:312, 23:967).

[28] Rec. Doc. 2.

[29] Rec. Doc. 7.

[30] Rec. Doc. 8.

On January 6, 2016, this case was reassigned to Section "K" of the Eastern District of Louisiana,[31] and on March 24, 2016, this case was reassigned to this Court.[32]

On November 8, 2016, Amtrak filed the instant motion for summary judgment.[33] On November 15, 2016, McDaniel filed an opposition.[34] In his opposition, McDaniel waived his claims concerning six positions he was not selected for and averred that he now only asserts violations of Title VII, the ADEA, and Louisiana law for three positions: (1) Route Director, Crescent/New Orleans; (2) Crew Base Manager, New Orleans; and (3) Onboard Services Manager, New Orleans.[35] On November 22, 2016, Amtrak filed a reply.[36]

On November 21, 2016, Amtrak filed the motion to strike McDaniel's statement of disputed material facts that was attached to his opposition to Amtrak's motion for summary judgment.[37] Amtrak also filed a motion to expedite the submission date of its motion to strike so that it would be considered along with Amtrak's motion for summary judgment.[38] On November 22, 2016, the Court denied Amtrak's motion for an expedited submission date, and instead set the submission date for both motions for December 7, 2016.[39] The Court ordered that any opposition

---

[31] Rec. Doc. 11.

[32] Rec. Doc. 17.

[33] Rec. Doc. 41.

[34] Rec. Doc. 52.

[35] *Id.* at 22.

[36] Rec. Doc. 64.

[37] Rec. Doc. 56.

[38] Rec. Doc. 59.

[39] Rec. Doc. 62.

to Amtrak's motion to strike must be filed by December 2, 2016.[40] On December 2, 2016, McDaniel filed an opposition to Amtrak's motion to strike.[41]

## II. Parties' Arguments

### A.    *Amtrak's Motion to Strike McDaniel's Statement of Disputed Material Facts*

#### 1.    **Amtrak's Arguments in Support of the Motion**

In this motion, Amtrak argues that this Court should strike McDaniel's "Statement of Disputed Material Facts" ("Statement") attached to his opposition to Amtrak's "Motion for Summary Judgment."[42] Amtrak contends that McDaniel's Statement is not comprised of statements of fact, but of "a series of 25 questions" without citations to the record.[43] According to Amtrak, Local Rule 56.2 requires that "[a]ny opposition to a motion for summary judgment must include a separate and concise statement of the material facts which the opponent contends present a genuine issue."[44] Amtrak argues that Local Rule 56.2 and Federal Rule of Civil Procedure 56(c) "requires more than simply alleging that a dispute exists," and instead requires McDaniel to point to specific evidence and parts of the record that establish a genuine issue of material fact for trial.[45] Amtrak avers that McDaniel's Statement does not meet these requirements, and thus must be stricken by the Court.[46]

---

[40] *Id.*

[41] Rec. Doc. 67.

[42] Rec. Doc. 56.

[43] Rec. Doc. 56-2 at 1–2.

[44] *Id.* at 2.

[45] *Id.* (quoting *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992); *Brown v. Board of Comm'rs*, 2013 WL 4548462, *1 (E.D. La. Aug. 27, 2013)).

[46] *Id.* at 2–3.

6

## 2.      McDaniel's Arguments in Opposition to the Motion

McDaniel argues that, in opposition to Amtrak's motion for summary judgment, McDaniel disputed more than twenty facts listed in Amtrak's "Statement of Uncontested Material Facts."[47] McDaniel avers that he also provided a twelve page detailed summary of the material facts in this case with 59 footnotes referencing depositions, affidavits, and other evidence as support.[48] According to McDaniel, all Local Rule 56.2 requires is "a separate and concise statement of the material facts which the opponent contends present a genuine issue."[49]

McDaniel further asserts that Amtrak seeks to strike his entire Statement without addressing each of the twenty five facts he alleged, and instead "makes general objections" against some and specifically identifies only five statements that it finds objectionable.[50] McDaniel states that his counsel chose to list the disputed facts in the form of questions to make it clear to the Court what factual issues exist that need to be resolved by a trier of fact.[51] McDaniel avers that the stylistic difference between listing disputed facts as a question, *e.g.*, "[w]as Plaintiff more qualified . . .", and Amtrak's preferred format of listing disputed facts as a statement, *e.g.*, "[w]hether Plaintiff was more qualified . . .", is not a proper basis for a motion to strike.[52] McDaniel also contests whether any of its listed questions of fact are irrelevant or improperly go to the ultimate issue at trial.[53]

---

[47] Rec. Doc. 67 at 1.

[48] *Id.* at 1–2.

[49] *Id.* at 2.

[50] *Id.*

[51] *Id.* at 3.

[52] *Id.*

[53] *Id.* at 3–5.

**B.      Amtrak's Motion for Summary Judgment**

      **1.      Amtrak's Arguments in Support of the Motion[54]**

In this motion, Amtrak argues that McDaniel's claims fail as a matter of law because his "entire theory of liability rests on nothing more than his subjective belief that, if Amtrak selected employees who were not white males as old or older than him for several of the positions he applied for, it *must* have been discrimination."[55] Amtrak avers that discrimination and retaliation claims brought under Louisiana state law are "governed by the same analysis" as federal discrimination and retaliation claims.[56] Accordingly, Amtrak addresses McDaniel's federal claims and state law claims simultaneously.[57]

      **a.      Disparate Treatment Claim under Title VII and Louisiana Law**

First, Amtrak avers that to succeed on his disparate treatment claim for a failure to promote, McDaniel must show that he was "clearly better qualified" than the selected candidate, and that "mere subjective speculation will not suffice."[58] Amtrak asserts that McDaniel applied to, and was not selected for, nine positions, and that in each case, McDaniel argues that he was not selected because of his race, gender, and/or age or because he filed a Charge of Discrimination with the EEOC.[59] In sum, Amtrak argues that the "undisputed evidence" demonstrates that McDaniel

---

[54] In McDaniel's opposition memorandum, McDaniel states that he waives his claims concerning six positions that he was not selected for, and only asserts claims for three positions: (1) Route Director, Crescent/New Orleans; (2) Crew Base Manager, New Orleans; and (3) Onboard Services Manager, New Orleans. Rec. Doc. 52 at 20–22. Accordingly, the Court will only address Amtrak's arguments regarding these three positions.

[55] Rec. Doc. 41-1 at 8 (emphasis in original).

[56] *Id.* at 11 (*DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007); *Chen v. Ochsner Clinic Found.*, 630 Fed. App'x 218, 223 (5th Cir. 2015)).

[57] *Id.*

[58] *Id.* at 10 (citing *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir. 1996); *EEOC v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1444 (5th Cir. 1995)).

[59] *Id.* at 12.

interviewed poorly, failed to present any enthusiasm or interest for the jobs he applied for, and did not impress seven different decision makers or the panels who interviewed candidates.[60] Amtrak also points out that most of the decision makers shared a common age, race, or gender class with McDaniel.[61]

### i.     Route Director, New Orleans

According to Amtrak, McDaniel alleges he was not selected for the Route Director position because of his age, gender, and/or race.[62] However, Amtrak avers that it has met its "exceedingly light" burden to articulate a non-discriminatory reason for its selection decision.[63] Amtrak states that it received applications from several employees for the Route Director position, and that Thomas Kirk ("Kirk"), a 55-year-old white male, selected Anella Popo, a 41-year-old African American female, for the position.[64] According to Amtrak, Kirk states that the candidates' age, race, and gender "played no role in the decision making process."[65] Amtrak avers that Kirk selected Popo because she performed well during her interview because she: provided examples of relevant past experiences and initiatives she had implemented at Amtrak; demonstrated an ability to lead; and obtained a Master's degree in Business Administration while working full time at Amtrak.[66] By contrast, Amtrak alleges that McDaniel provided vague answers during his interview and did

---

[60] *Id.* at 29.

[61] *Id.*

[62] *Id.* at 12.

[63] *Id.*

[64] *Id.* at 3.

[65] *Id.*

[66] *Id.* at 12–13.

not demonstrate he had the experience needed for the position.[67] Amtrak also contends that Kirk knew of McDaniel's leadership style and found it lacking, and knew that McDaniel had received negative feedback from other managers.[68] Amtrak states that nothing McDaniel said in his interview showed he learned from his past mistakes or had changed.[69] Amtrak argues that the Fifth Circuit acknowledges that a candidate who does not "interview well" or "display the same leadership ability as [the person selected]" are "legitimate, non-discriminatory reasons to prefer one candidate over another."[70]

Amtrak contends that because it has met its burden of production, the burden shifts back to McDaniel to establish that these non-discriminatory reasons are pretext.[71] However, Amtrak avers that McDaniel's subjective belief that he was more qualified than Popo is not evidence of pretext.[72] According to Amtrak, the Fifth Circuit requires evidence that the plaintiff was "clearly better qualified" than the selected candidate, such that no reasonable person could have selected the chosen candidate over the plaintiff.[73]  Amtrak contends that neither Kirk's use of subjective criteria, such as assessing a candidate's interview, nor Amtrak's selection of several African American women younger than McDaniel are evidence of pretext.[74] Amtrak avers that McDaniel

---

[67] *Id.* at 13.

[68] *Id.*

[69] *Id.*

[70] *Id.* (citing *Gregory v. Town of Verona, Miss.*, 574 Fed. App'x 525, 528 (5th Cir. 2014)).

[71] *Id.*

[72] *Id.*

[73] *Id.* at 13–14 (citing *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 882 (5th Cir. 2003); *Bright v. GB Bioscience, Inc.*, 305 F. App'x 197, 205 n.8 (5th Cir. 2008); *EEOC v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1444 (5th Cir. 1995)).

[74] *Id.* (citing *Manning*, 332 F.3d at 882).

cannot point to any statement or testimony that gave him the impression that Popo was selected based on her race, gender, or age.[75] Moreover, Amtrak argues that the fact that Kirk, who made the employment decision, was in the same protected age, gender, and race classes as McDaniel is evidence that discrimination was not a motivating factor.[76] Thus, Amtrak asserts that McDaniel failed to meet his burden to establish pretext and Amtrak is entitled to summary judgment on his claims with respect to this position.[77]

### ii.     Crew Base Manager, New Orleans

Amtrak contends that it has presented nondiscriminatory reasons for why Lori Ball-Austin, a 50-year-old African American female, was selected for the Crew Base Manager, New Orleans position.[78] Amtrak avers that Anella Popo, a 43-year-old African American female, selected Ball-Austin because she was very organized with reports, had the skills to develop materials at the last minute, and could manage multiple tasks at once.[79] According to Amtrak, Popo was familiar with McDaniel's work and found it lacking "in numerous respects," as she previously had to make "numerous changes to correct issues with his work," and that Popo did not believe McDaniel had the organizational skills needed for the position.[80]

Amtrak argues that McDaniel cannot establish pretext because he does not know how he ranked among the other candidates, never spoke with Popo about why he was not selected, and

---

[75] *Id.* at 15.

[76] *Id.* (citing *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 1002 (5th Cir. 1996); *Easterling v. Tensas Parish Sch. Bd.*, No. 14-0473, 2016 WL 1452435 at * 6 (W.D. La. Apr. 13, 2016); *Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466, 1471 (11th Cir. 1991); *Coggins v. Gov't of D.C.*, 173 F.3d 424, 1999 WL 94655 at *4 (4th Cir. 1999)).

[77] *Id.*

[78] *Id.* at 21–22.

[79] *Id.* at 22.

[80] *Id.*

never heard anything from Popo that gave him the impression that her selection was based on gender, race, or age.[81] Amtrak asserts that merely having more experience than Ball-Austin is insufficient, as McDaniel must show he was clearly more qualified for the position.[82] Amtrak avers that McDaniel's argument during his deposition that he believes he was discriminated against because of a "pattern of selecting African Americans for positions [he has] applied for" is not enough to survive summary judgment.[83]

### iii.      Onboard Service Manager, New Orleans

Amtrak asserts that McDaniel's discrimination claim for the Onboard Service Manager, New Orleans position fails as well because Amtrak has offered legitimate, non-discriminatory reasons for selecting Horatio Ames, a 56-year-old African American male, for this position.[84] Amtrak contends that Anella Popo, a 43-year-old African American female, selected Ames because he had experience in customer services, management, and train and engine equipment.[85] Amtrak also states that Popo selected Ames because he had leadership qualities, mentorship abilities, enthusiasm, and motivation, and because he gave good answers with specific examples during his interview.[86] Amtrak avers that Ames had no onboard experience, but Popo believed this could be easily learned, and that she respected him for his military service, how he motivated employees and performed his work duties well, and that he had a good rapport with employees

---

[81] *Id.*

[82] *Id.*

[83] *Id.*

[84] *Id.* at 24.

[85] *Id.*

[86] *Id.*

working under him.[87] Amtrak argues that military experience and leadership potential are legitimate reasons for selecting a candidate.[88]

According to Amtrak, McDaniel testified that he did not know what qualities Popo was looking for or how he ranked against other candidates, and that he never spoke to Popo about why he was not selected.[89] Thus, Amtrak asserts that he cannot argue that his qualifications were "so superior" to Ames' qualifications that no reasonable person could have selected Ames over McDaniel.[90] Thus, Amtrak contends that McDaniel has not provided any evidence of pretext other than his "subjective unsupported" beliefs.[91]

### b.   Retaliation Claims under Title VII and Louisiana Law

Second, Amtrak argues that to establish retaliation under Title VII, McDaniel must demonstrate that he (1) engaged in a protected activity, (2) was not offered a position, and (3) that the protected activity and adverse employment action were causally linked.[92] According to Amtrak, if it shows a legitimate, non-retaliatory justification for its action, McDaniel must demonstrate that Amtrak's reason is pretext for retaliation.[93] In sum, Amtrak contends that there is no evidence of retaliation, and that McDaniel continued to fail to impress interview panels after he made a discrimination complaint.[94]

---

[87] *Id.*

[88] *Id.* (citing *Price*, 283 F.3d at 723).

[89] *Id.*

[90] *Id.* at 24–25.

[91] *Id.* at 24.

[92] *Id.* at 11 (citing *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014)).

[93] *Id.* (citing *Coleman v. Jason Pharm.*, 540 Fed. App'x 302, 303–04 (5th Cir. 2013); *Serling v. Am. Airlines, Inc.*, 237 Fed. App'x 972 (5th Cir. 2007)).

[94] *Id.* at 29.

i.      **Crew Base Manager, New Orleans**

Amtrak contends that it has presented sufficient non-retaliatory reasons, stated *supra*, for why Lori Ball-Austin, a 50-year-old African American female, was selected for the Crew Base Manager, New Orleans position over McDaniel.[95] Additionally, Amtrak argues that McDaniel's retaliation claim fails because Popo was not aware that McDaniel had engaged in any activity protected under Title VII when she made her selection decision.[96] According to Amtrak, Popo only testified that McDaniel told her "at some unknown time" that he filed a lawsuit against Amtrak, but "it had nothing to do with her."[97] Moreover, Amtrak points out that McDaniel did not file the lawsuit until November 2015, well after the selection decision."[98] Amtrak alleges that McDaniel's only evidence to establish that Popo knew about any protected activity was that her manager, Thomas Kirk, knew about McDaniel's December 2013 internal complaint; however, Amtrak argues that McDaniel admitted he did not know if Kirk told Popo about the complaint, and offers only a "factually-unsupported assumption to rebut Popo's testimony."[99]

iii.     **Onboard Service Manager, New Orleans**

Amtrak contends that it has also presented sufficient non-retaliatory reasons, stated *supra*, for its selection of Horatio Ames, a 56-year-old African American male, for the position of Onboard Service Manager, New Orleans.[100] Amtrak argues that McDaniel's retaliation claim fails here because Popo was not aware that McDaniel made any complaint of discrimination when she

---

[95] *Id.* at 21–22.

[96] *Id.* at 23.

[97] *Id.*

[98] *Id.*

[99] *Id.*

[100] *Id.* at 25.

made her selection decision for this position.[101] According to Amtrak, McDaniel "assumes that Popo acted with retaliatory intent" because he was not initially scheduled for an interview.[102] However, Amtrak avers that Popo testified in her deposition that she had selected McDaniel for an interview, but that the Human Capital Department "inadvertently failed to contact him."[103] According to Amtrak, McDaniel "has no information to dispute her testimony," and that McDaniel was ultimately interviewed.[104] Additionally, Amtrak states that McDaniel cannot establish pretext, as "merely questioning whether he might not have initially been scheduled for an interview" is insufficient evidence.[105]

### c.    Age Discrimination Claim under the ADEA and Louisiana Law

Third, Amtrak argues that the ADEA requires that McDaniel demonstrate that age was the "but for" cause of Amtrak's adverse action, and that mixed motive claims are not cognizable under the ADEA.[106] Here, Amtrak avers that McDaniel asserts multiple reasons other than age that motivated Amtrak's selection decisions.[107] Thus, Amtrak asserts that McDaniel "necessarily concedes that age was not the but-for cause of these employment decisions."[108] Additionally, Amtrak contends that McDaniel's individual age discrimination claims each fail as a matter of law.

---

[101] *Id.*

[102] *Id.*

[103] *Id.*

[104] *Id.*

[105] *Id.* (citing *Anderson*, 477 U.S. at 249–50).

[106] *Id.* at 10 (citing *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009); *Leal v. McHugh*, 731 F.3d 405, 411 (5th Cir. 2013)).

[107] *Id.* at 12.

[108] *Id.*

### i.      Crew Base Manager, New Orleans

Amtrak contends that it has presented nondiscriminatory reasons, stated *supra*, for why McDaniel was not selected for the Crew Base Manager, New Orleans position.[109] Amtrak avers that McDaniel has not presented evidence that Popo's reasons for her selection decision were pretext.[110] In addition, Amtrak argues that Plaintiff's testimony that he believed he was a threat to Popo because his age translated to "experience . . . wisdom . . . [a]nd the institutional knowledge of the business," does not establish age discrimination.[111] Rather, Amtrak avers that this would only show Popo acted in her own interest and was motivated by self-preservation, not discrimination.[112]

### ii.      Onboard Service Manager, New Orleans

Amtrak asserts that McDaniel's age discrimination claim for the Onboard Service Manager, New Orleans position fails because Horatio Ames, the 56-year-old African American male who was selected for the position, was not significantly younger than McDaniel.[113] Rather, Amtrak states that Ames was only two years younger than McDaniel and "well within the protected class."[114] Additionally, as stated *supra*, Amtrak argues that it has articulated legitimate, non-discriminatory reasons for selecting Ames, and McDaniel cannot offer any proof of pretext.[115]

---

[109] *Id.* at 21–22.

[110] *Id.* at 22.

[111] *Id.* at 22–23.

[112] *Id.* at 23.

[113] *Id.* at 24.

[114] *Id.*

[115] *Id.*

### d.   *Disparate Impact Age Discrimination Claim under the ADEA*

Fourth, Amtrak argues that McDaniel's disparate impact age discrimination claim, *i.e.* his ADEA claim that Amtrak's facially neutral employment policies adversely and unequally affected persons falling within his protected age class, fails as a matter of law.[116] According to Amtrak, in order for McDaniel to establish his prima facie case of disparate-impact discrimination, he must: "(i) identify the challenged employment practice or policy, and pinpoint [Amtrak's] use of it; (ii) demonstrate a disparate impact on a group that falls within the protective ambit of the ADEA; and (iii) demonstrate a causal relationship between the identified practice and the disparate impact."[117] Amtrak contends that this burden is "heavy," and also requires McDaniel to produce "statistical evidence of a kind and degree sufficient to show" a "substantially disproportionate" impact on his protected age group.[118]

Here, Amtrak avers that McDaniel has not identified any facially neutral policy that had an adverse impact on employees protected by the ADEA.[119] According to Amtrak, the "entire basis" of McDaniel's claim is that the average age of the nineteen individuals who were offered severance packages as a result of Amtrak's 2013 RIF was 57.3.[120] However, Amtrak argues this does not identify a specific facially-neutral policy responsible for the purported disparate impact, as it is not enough to allege that a reorganization plan in general was responsible.[121] Additionally, Amtrak

---

[116] *Id.* at 30 (citing *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977)).

[117] *Id.* (citing *Gonzalez v. City of New Braunfels, Tx.*, 176 F.3d 834, 839 n.26 (5th Cir. 1999); *Cefalu v. Tangipahoa Parish Sch. Bd.*, 2013 WL 5329808 at *7–8 (E.D. La. Sept. 20, 2013)).

[118] *Id.* (citing *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 657 (1989); *Munoz v. Orr*, 200 F.3d 291, 299 (5th Cir. 2000); *Moore v. Southwestern Bell Tele. Co.*, 593 F.2d 607, 608 (5th Cir. 1979); *Powell v. Dallas Morning News L.P.*, 776 F. Supp. 2d 240, 257 (N.D. Tex. 2011)).

[119] *Id.* at 31.

[120] *Id.*

[121] *Id.* (citing *Leichihman v. Pickwick Int'l*, 814 F.2d 1263, n.5 (8th Cir. 1987); *Powell v. Dallas Morning*

asserts that averaging the ages of nineteen employees impacted by the RIF "is woefully insufficient as evidence of a disparate impact because it does not show a *disparity* between how a policy impacted persons inside and outside of the protected class."[122] Amtrak avers that McDaniel's calculation is fatally flawed because it does not make any comparison; in fact, Amtrak argues that a comparison would show that the pre-RIF average age of the "non-agreement workforce" that McDaniel was a part of was 49.80 years and the post-RIF average was 49.70 years.[123] Amtrak contends that McDaniel also failed to take into account the varying job titles impacted by the RIF, the reasons for eliminating those positions, or the ages of the persons whose jobs were retained.[124] Amtrak avers that McDaniel does not consider if nineteen employees is a large enough sample size to have any statistical significant or acknowledge that a 0.1 year change in the average age between pre-RIF and post-RIF is not probative of disparate impact.[125]

### 2.    McDaniel's Arguments in Opposition to the Motion

#### a.    *Discrimination and Retaliation Claims under Title VII, the ADEA, and Louisiana Law*

McDaniel contends that material issues of disputed fact exist regarding whether he was not selected for three positions he applied for because of his race, gender, and/or age or as retaliation for filing an EEOC claim: (1) Route Director Crescent, New Orleans; (2) Crew Base Manager, New Orleans; and (3) Onboard Services Manager, New Orleans.[126] McDaniel "waives his claims

---

*News L.P.*, 776 F. Supp. 2d 240, 257 (N.D. Tex. 2011)).

[122] *Id.* at 31–32 (citing *Munoz v. Orr*, 200 F.3d 291, 299 (5th Cir. 2000)).

[123] *Id.* at 32.

[124] *Id.*

[125] *Id.* (citing *Bennett v. Total Minatome Corp.*, 138 F.3d 1053, 1062 (5th Cir. 1998); *Overstreet v. Siemens Energy & Automation, Inc.*, 2005 WL 3068792, * 4 (W.D. Tex. Sept. 26, 2005)).

[126] Rec. Doc. 52 at 20–22.

concerning the other selection decisions" and "concedes" that there is not sufficient evidence to support a claim for discrimination in his non-selection for the other six positions.[127]

McDaniel further asserts that Amtrak misstates the applicable law for McDaniel's claims.[128] First, McDaniel avers that his age discrimination claim does not fail simply because he has alleged multiple reasons for the adverse employment actions, because he had plead his causes in the alternative.[129]  According to McDaniel, he alleged that his non-selection was motivated "in whole or in party" by his "age, race and/or gender," and that a jury could find that but for McDaniel's age, he would have been selected for the positions he applied for.[130] Second, McDaniel argues that Amtrak overstated the "clearly better qualified" standard for failure to promote claims.[131] McDaniel contends that showing he is merely better qualified for a position can also be one factor that can be considered alongside other evidence to demonstrate discrimination.[132] McDaniel avers that he can show pretext by establishing that Amtrak's proffered reasons were not the real reasons for its employment decision.[133]

### i.      Route Director Crescent, New Orleans

McDaniel, a 58-year-old male at the time of the selection, asserts that he was qualified for the position of Route Direct Crescent, New Orleans, and that the position was filled "by someone

---

[127] *Id.* at 22.

[128] *Id.* at 16–20.

[129] *Id.* at 16–17 (citing *Griffin v. United Parcel Service, Inc.*, 2010 WL 126229 (E.D. La. Jan. 8, 2010)).

[130] *Id.* at 17.

[131] *Id.* at 19.

[132] *Id.*

[133] *Id.* (citing *Gonzalez v. City of San Antonio,* 2013 WL 1149996 (5th Cir. 2013)).

17 years younger, black and female."[134] According to McDaniel, the duties and responsibilities of the Route Director were "substantially the same" as McDaniel's prior position as Assistant Superintendent, with the additional responsibility for overseeing the profit and loss of the budget.[135] However, McDaniel avers that he was previously responsible for managing a $24,000,000 budget, and the Route Director position had a smaller geographical territory, one less train, and fewer managers and employees to supervise as he had as Assistant Superintendent.[136] McDaniel also contends that he was an "exemplary" employee with twenty-five years of service, "strong" performance evaluations, and no record of being disciplined.[137] McDaniel points out that Thomas Kirk, the decision maker, reviewed and approved his prior positive performance evaluations.[138] McDaniel asserts that his application for the Route Director position included his resume and a letter of recommendation from the Deputy Director of the North Carolina Department of Transportation, Allan Paul, who worked with McDaniel in his capacity as Assistant Superintendent for Amtrak and praised McDaniel as "a highly qualified candidate" for the position.[139] Even though Kirk testified that he respected Paul's opinion, McDaniel avers, Kirk selected Anella Popo for the position of Route Director instead.[140]

---

[134] *Id.* at 20.

[135] *Id.* at 3.

[136] *Id.*

[137] *Id.* at 3–4.

[138] *Id.* at 4.

[139] *Id.* at 4–5.

[140] *Id.* at 5.

According to McDaniel, Popo had less work experience with Amtrak than McDaniel did.[141] McDaniel points out that Popo was seventeen years younger and worked in non-management positions from 1995 to 2007, while McDaniel had managerial responsibility from 2002 to 2006 until he was promoted to Assistant Superintendent.[142] Moreover, McDaniel argues that Popo's first management position was as Manager of Stations in D.C., which reports to an Assistant Superintendent, the same position that McDaniel had.[143] McDaniel asserts that in 2011, Popo was transferred to a new position in Miami where she did not supervise management employees and was only responsible for a budget of $9,000,000, as opposed to McDaniel's management of a $24,000,000 budget for seven years.[144] Thus, McDaniel argues that Popo did not supervise any non-agreement management employees for two years prior to being selected for the Route Director position and only had four years of experience managing non-agreement management employees, as opposed to his "highly successful and consecutive total of eleven years in management."[145]

Additionally, McDaniel states that Amtrak refused to produce Popo's 2010 or 2011 performance evaluations, and claims to have lost her 2013 evaluation, and therefore cannot argue that Popo's prior performance was superior to McDaniel's.[146] According to McDaniel, the 2012 performance evaluations were the latest evaluations available to Kirk when making his decision, which showed that both Popo and McDaniel had identical scores but McDaniel had greater job

---

[141] *Id.* at 5–6.

[142] *Id.* at 5.

[143] *Id.*

[144] *Id.*

[145] *Id.* at 6.

[146] *Id.*

responsibilities.[147] Moreover, McDaniel points out that Popo's evaluation had "a dose of healthy criticism, recommendations and directives," and listed accomplishments that, McDaniel contends, would not prepare her for the Route Director position.[148]

McDaniel argues that, while Popo had a Masters of Business Administration, a Master's Degree was only listed under the "Preferred Education" section for the position, and only a Bachelor's Degree or "the equivalent combination of education and training/experience" was listed under "Requirements."[149] McDaniel avers that he had an associate's degree in business, studied finance at George Washington University, and had 25 years of experience at Amtrak, and that a Master's Degree was clearly not necessary as Thomas Kirk himself, who only holds a Bachelor's Degree in political science, was selected to be Deputy General Manager in 2013.[150] Additionally, McDaniel asserts that the job description for at least two Assistant Superintendent positions, one of which McDaniel held for seven years, also now lists a Master's Degree as the "preferred" education level; McDaniel argues that the new preference for an MBA "is essentially code" for Amtrak managers to hire younger employees, as "it is a rare event" for older employees to have earned an MBA.[151]

McDaniel also asserts that there are inconsistencies between Popo's resume and deposition testimony concerning when she obtained her MBA.[152] For example, McDaniel alleges that in Popo's deposition, she said she was living in Fredericksburg, Virginia, while working on her

---

[147] *Id.*

[148] *Id.* at 7.

[149] *Id.*

[150] *Id.* at 8.

[151] *Id.*

[152] *Id.* at 8–9.

Master's Degree at Strayer University until July 2013, but was also allegedly living in Miami from 2011 to 2013 while working full-time for Amtrak.[153] Thus, McDaniel contends that there is a material issue of disputed fact regarding "what Mr. Kirk, the decision maker, should or could have reasonably believed about what Ms. Popo had truly been doing educationally and career wise in the two or three years leading up to her selection."[154]

McDaniel also avers that Kirk's interview notes demonstrate that there was "nothing more impressive" about Popo's responses that would "justifiability outweigh or compensate" for Popo's lack of experience and knowledge for this position.[155] Additionally, McDaniel states that Amtrak required Kirk to complete a "Candidate Selection Justification" form, which states the race and gender for each applicant and the birthday of every applicant except McDaniel.[156] McDaniel argues that this document shows that Popo was the youngest applicant, and the very fact that the form includes race, gender, and birthdays of the applicants is circumstantial evidence that Amtrak encouraged its decision makers to consider such factors.[157] McDaniel further contends that Kirk's Declaration states that the hiring manager completed and signed the form, but that Amtrak's purported uncontested facts states that a Talent Acquisition Specialist may choose to fill out the form.[158] McDaniel avers that this is a disputed issue of fact precluding summary judgment.[159]

---

[153] *Id.*

[154] *Id.* at 9.

[155] *Id.* at 10.

[156] *Id.*

[157] *Id.*

[158] *Id.*

[159] *Id.* at 10–11.

Furthermore, McDaniel points out that Kirk made a "disingenuous statement to the internal EEO investigator that [Kirk] doesn't know how he knows about [McDaniel's] evaluations and [Kirk's] misrepresentations" that McDaniel was not meeting expectations.[160] McDaniel points to an affidavit by Bruce Mullins, who worked under McDaniel and stated that McDaniel was an effective leader, accessible, a good mentor, and knew more about Amtrak operations than any other manager that Mullins had worked with, and that Popo was not as skilled, experienced, or temperamentally suited for her position.[161] McDaniel also asserts that, prior to the selection of the Route Director, Amtrak's monthly publication, "Amtrak Ink," ran several articles recognizing under-40-year-old employees and "younger influencers" as integral parts of Amtrak's "multigenerational team."[162]

McDaniel concedes that Amtrak has met its burden under the *McDonnell Douglas* framework pointing to non-discriminatory reasons for why Thomas Kirk selected Anella Popo for the position instead of McDaniel.[163] However, McDaniel points to evidence that he contends, taken together, demonstrates a factual dispute as to: (1) whether McDaniel was "more and/or clearly more qualified" for the position of Route Director; and (2)  whether Kirk's rationale for his selection has any credibility or merit.[164]

---

[160] *Id.* at 12, 14, 21.

[161] *Id.*

[162] *Id.* at 11.

[163] *Id.*

[164] *Id.* at 21.

24

### ii.      Crew Base Manager, New Orleans

According to McDaniel, after he filed his EEOC complaint, he applied for two more positions in New Orleans in 2015.[165] McDaniel asserts that there is a disputed issue of material fact about whether he was "more and/or clearly more qualified" for the position of Crew Base Manager, New Orleans than the individual selected, Lori Ball-Austin.[166] McDaniel avers that Ball-Austin had no prior experience managing a crew base, and "barely met [her] goals" when she was Onboard Services Manager working under the supervision of McDaniel when he was Assistant Superintendent.[167] By contrast, McDaniel states that he held the Crew Base Manager position for four years in North Carolina "with great success," and that he had supervised the Crew Base Manager position for seven years as Assistant Superintendent.[168] McDaniel also contends that Popo admitted that she had no complaints about his performance of his duties.[169] McDaniel argues that Anella Popo, the decision maker, and Thomas Kirk, her direct supervisor, knew that he had filed an EEOC claim, because he had informed Popo of the EEOC complaint the same day he filed it on June 18, 2014, and she called Kirk to let him know.[170]

### iii.      Onboard Service Manager, New Orleans

McDaniel further contends that there is a disputed issue of material fact regarding whether he was "more and/or clearly more qualified" for the position of Onboard Service Manager, New

---

[165] *Id.* at 14.

[166] *Id.* at 15, 21.

[167] *Id.*

[168] *Id.*

[169] *Id.* at 14.

[170] *Id.* at 13, 21.

Orleans than the individual selected, Horatio Ames.[171] McDaniel avers that Ames had no prior onboard experience and had only been with Amtrak for three years.[172] McDaniel states that he also supervised the Onboard Services Manager while he was Assistant Superintendent.[173] Moreover, McDaniel asserts that he was not included on the interview list until he complained to the Human Capital Department.[174] McDaniel argues that, while Popo stated that this was Human Capital's error, he asserts that Popo and Kirk knew he had filed an EEOC claim, and alleges that he was not selected as retaliation for filing the internal complaint and the EEOC complaint.[175]

### b.   Disparate Impact Age Discrimination Claim

According to McDaniel, Amtrak articulated a "facially-neutral policy" in the "Declaration of Kathryn Huss," the Human Capital Business Partner in 2013, who detailed the elimination of nineteen positions during the 2013 RIF.[176] In her declaration referred to by McDaniel, Huss states that the 2013 reorganization resulted in the elimination of a number of Superintendent and Assistant Superintendent positions "primarily in the Long Distance business line."[177] Huss contends that this included McDaniel's Assistant Superintendent position, which was eliminated "as a result of the realignment to a route based management organizational structure in the Long Distance business line."[178] McDaniel argues that the policy does not explain why his Assistant

---

[171] *Id.* at 15, 22.

[172] *Id.*

[173] *Id.* at 15.

[174] *Id.* at 22.

[175] *Id.* at 15, 22.

[176] *Id.*

[177] Rec. Doc. 41-6 at 3.

[178] *Id.*

Superintendent Position was eliminated or what new position would assume his previous responsibilities, and that there is "no true rationale" for why these positions were eliminated that led to "such an adverse impact on older employees."[179] According to McDaniel, the statistical evidence is "simple and clear" because the average age of those holding the eliminated positions were 57.3 while the average age of the non-eliminated positions was 49.8.[180]

In his "Summary of Relevant Facts," McDaniel points out that Amtrak changed its retirement plan after the reorganization, such that current employees under the age of 50 on July 1, 2015, are no longer entitled to certain retirement benefits.[181] McDaniel argues that by doing so, "Amtrak was able to reduce its costs by intentionally lowering the ages of its employees through the purportedly neutral reorganization."[182]

### 3.   Amtrak's Reply Memorandum in Further Support of the Motion

#### a.   *Route Director, New Orleans*

In its reply, Amtrak asserts that McDaniel merely compares his background and experience to that of Anella Popo, but that such an argument must fail because "better education, work experience, and longer tenure with a company do not establish that [plaintiff] is clearly better qualified."[183] According to Amtrak, the Fifth Circuit has stated that "[d]ifferences in qualifications between job candidates are generally not probative evidence of discrimination unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons

---

[179] Rec. Doc. 52 at 23.

[180] *Id.*

[181] *Id.* at 11.

[182] *Id.*

[183] Rec. Doc. 64 at 2 (citing *Price v. Fed. Exp. Corp.*, 283 F.3d 715, 723 (5th Cir. 2002); *Gonzalez v. City of San Antonio*, 2013 WL 1149996 at *4 (5th Cir. Mar. 12, 2013)).

of impartial judgment that the plaintiff was clearly better qualified for the position at issue."[184] Amtrak asserts that McDaniel's comparison of the performance evaluations of McDaniel and Popo is irrelevant, as Kirk did not review or compare the evaluations when making his decision.[185] Additionally, Amtrak argues that McDaniel admitted he does not know what qualities Kirk was seeking for the position.[186]

Amtrak further contends that Kirk explained that he thought Popo showed good work ethic by obtaining a Master's Degree while working.[187] Thus, Amtrak asserts that McDaniel's arguments that the Master's Degree is irrelevant or that Popo may not have earned the degree fail, because what matters is Kirk's perception of Popo's work ethic at the time he made the selection decision.[188] Amtrak states that questioning the legitimacy of Popo's degree does not constitute evidence that Kirk's decision was based on age, race, or gender.[189] Moreover, Amtrak argues that McDaniel's allegation that a preference for a Master's Degree was meant to eliminate older job candidates was made without evidence and does not support a disparate treatment claim.[190]

Amtrak avers that the opinions of Allan Paul, who does not work for Amtrak and was not involved in the Route Director selection decision, and Bruce Mullins, who also was not a decision maker, are irrelevant and do not create a factual dispute.[191] Likewise, Amtrak argues that simply

---

[184] *Id.* at 2–3 (quoting *Deines v. Tex. Dep't of Prot. & Reg. Svcs.*, 164 F.3d 277, 279 (5th Cir. 1999)).

[185] *Id.* at 3.

[186] *Id.*

[187] *Id.*

[188] *Id.*

[189] *Id.*

[190] *Id.* (citing *Bennett v. Total Minatome Corp.*, 138 F.3d 1053, 1061 (5th Cir. 1998)).

[191] *Id.* at 4.

because Kirk filled out the Candidate Justification Form instead of a Human Capital representative as McDaniel points out is also irrelevant, particularly because the form was not required to be filled out and was not used during the decision-making process.[192] Amtrak also asserts that the fact that Kirk's handwritten interview notes are difficult to read or scant does not undermine his more detailed recollection of the interview.[193] Amtrak contends that the Amtrak articles about younger employees do not establish pretext or serve as evidence of age discrimination, and points out that this argument was rejected by the Fifth Circuit in *Bennett v. Total Minatome Corp.*[194] Additionally, Amtrak argues that McDaniel's unsubstantiated allegation that the 2013 RIF was done to reduce retirement benefit costs was not based on any evidence, and would not be evidence that Kirk selected Popo based on age.[195] Finally, Amtrak avers that McDaniel's allegations that Amtrak's investigation of his internal complaint was not timely completed has no relevance to why Kirk selected Popo for Route Director.[196]

### b.    Crew Base Manager, New Orleans

Amtrak asserts that McDaniel's sole argument in support of his claim of discrimination regarding the Crew Base Manager position is that he was more experienced than the selected candidate, Lori Ball-Austin, and his own "self-serving testimony" that she "barely met goals."[197]

---

[192] *Id.*

[193] *Id.*

[194] *Id.* at 4–5 (citing *Bennett v. Total Minatome Corp.*, 138 F.3d 1053, 1061 (5th Cir. 1998)).

[195] *Id.* at 5.

[196] *Id.*

[197] *Id.*

Amtrak argues that it is irrelevant that Ball-Austin may have lacked management experience when the decision maker was seeking a candidate with exception organizational skills.[198]

Additionally, Amtrak avers that McDaniel only supports his retaliation claim by alleging that he told Popo, the decision maker, that he filed an EEOC charge seven months before the Crew Base Manager position was posted.[199] However, Amtrak contends that McDaniel testified three times in his deposition that he only suspected Popo knew about his EEOC charge, but had no proof that she knew about it.[200] Amtrak avers that McDaniel cannot submit a self-serving affidavit now to create a factual dispute with his own testimony.[201] Amtrak also points out that even if Popo knew about the EEOC charge, it would be insufficient evidence to establish pretext.[202]

### c.   *Manager Onboard Services, New Orleans*

Amtrak argues that McDaniel's mere suspicion that Amtrak's decision to select Horatio Ames for this position "may have been" retaliatory or based on race because he had less experience than Ames is not evidence of pretext.[203] Moreover, Amtrak asserts that McDaniel cites to no evidence to dispute Popo's testimony that he did not initially receive an interview due to an administrative error, and alleges without support that this was not truthful.[204] Amtrak also points

---

[198] *Id.* at 5–6 (citing *Rowe v. Jewell*, 88 F. Supp. 3d 647, 669–70 (E.D. La. 2015)).

[199] *Id.* at 6.

[200] *Id.*

[201] *Id.* (citing *Kelly v. U.S.*, 805 F. Supp. 14, 16 (E.D. La. 1992) ("A party opposing a motion for summary judgment cannot simply rely on self-serving affidavits.")).

[202] *Id.* (citing *Strong v. Univ. Healthcare Sys., LLC*, 482 F.3d 802, 808 (5th Cir. 2007)).

[203] *Id.*

[204] *Id.* at 7.

out that it appears that McDaniel has waived his age discrimination claim, as Ames is only three years younger than McDaniel, and previously waived his gender discrimination claim.[205]

### d.   Disparate Impact Claim

Amtrak avers McDaniel failed to identify a specific facially-neutral policy that caused a disparate impact on a protected age class, as the case law makes clear that identifying a reorganization plan is insufficient.[206] Moreover, Amtrak argues that McDaniel presents no credible evidence of a disparate impact on employees over 40, as his numbers lack the required statistical significance.[207] Further, Amtrak asserts that McDaniel failed to show that a statistically significant disparity was caused by the facially-neutral policy, as correlation is insufficient evidence.[208] Here, Amtrak contends that simply alleging that the average ages of 19 terminated employees, which is less than half of the employees whose jobs were eliminated in the 2013 RIF, were higher than the average ages of more than 1,500 employees not impacted by the 2013 RIF fails to establish disparate impact.[209]

## III. Applicable Law

### A.   Legal Standard on a Motion for Summary Judgment

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment

---

[205] *Id.* at 7 n.24.

[206] *Id.* at 8 (citing *Powell v. Dallas Morning News L.P.*, 776 F. Supp. 2d 240, 258–259 (N.D. Tex. 2011)).

[207] *Id.* (citing *Moore v. Southwestern Bell Tele. Co.*, 593 F.2d 607, 608 (5th Cir. 1979)).

[208] *Id.* at 9 (citing *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000)).

[209] *Id.* (citing *Overstreet v. Siemens Energy & Automation, Inc.*, 2005 WL 3068792, * 4 (W.D. Tex. Sept. 26, 2005)(comparison of group of 11 to group of 100 could not show strong statistical disparity)).

31

as a matter of law."[210] When assessing whether a dispute as to any material fact exists, the court

considers "all of the evidence in the record but refrains from making credibility determinations or

weighing the evidence."[211] All reasonable inferences are drawn in favor of the nonmoving party,

but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and

conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[212]

If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party,"

then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of

law.[213] The nonmoving party may not rest upon the pleadings, but must identify specific facts in

the record and articulate the precise manner in which that evidence establishes a genuine issue for

trial.[214]

      The party seeking summary judgment always bears the initial responsibility of informing

the Court of the basis for its motion and identifying those portions of the record that it believes

demonstrate the absence of a genuine issue of material fact.[215] Thereafter, the nonmoving party

should "identify specific evidence in the record, and articulate" precisely how that evidence

supports her claims.[216] To withstand a motion for summary judgment, a plaintiff must show that

---

[210] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[211] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[212] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[213] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[214] *See, e.g., Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[215] *Celotex*, 477 U.S. at 323.

[216] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994).

there is a genuine issue for trial by presenting evidence of specific facts.[217] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[218] Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[219]

## B.  McDonnell Douglas *Burden-Shifting Framework*

The burden-shifting framework established in *McDonnell Douglas Corp. v. Green* governs claims alleging discrimination and retaliation under Title VII, as well as allegations of age discrimination under the ADEA.[220] To survive summary judgment in a case under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discrimination.[221] "To establish a prima facie case, a plaintiff need only make a very minimal showing."[222] If the plaintiff can establish a prima facie case, the burden will shift to the defendant to articulate a legitimate, nondiscriminatory purpose for an adverse employment action.[223] The defendant must point to

---

[217] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty*, 477 U.S. 242, 248–49 (1996)).

[218] *Little*, 37 F.3d at 1075.

[219] *Martin v. John W. Stone Oil Distrib., Inc*., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R .Civ. P. 56(c)(2).

[220] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Munoz v. Seton Healthcare, Inc.*, 557 F. App'x 314, 321 (5th Cir. 2014)).

[221] *McDonnell Douglas Corp.*, 411 U.S. at 802; *see also Mendoza v. Helicopter*, 548 F. App'x 127, 129 (5th Cir. 2013) (applying the *McDonnell Douglas* framework to discrimination and retaliation claims).

[222] *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996) (quoting *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 639 (5th Cir. 1985)).

[223] *Id.*

admissible evidence in the record,[224] but the burden is one of production, not persuasion.[225] The defendant is not required to show that the employment decision was proper, only that it was not discriminatory.[226] "[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason" for an adverse employment action.[227]

If the defendant satisfies its burden of production, the burden shifts back to the plaintiff to show that any non-discriminatory purposes offered by the defendant are merely a pretext for discrimination.[228] Plaintiff can do this by presenting evidence of disparate treatment or demonstrating that the proffered explanation is false or "unworthy of credence."[229]

## IV. Analysis

### A.   *Amtrak's Motion to Strike McDaniel's Statement of Disputed Facts*

Amtrak argues that this Court should strike McDaniel's "Statement of Disputed Material Facts" ("Statement") attached to his opposition to Amtrak's "Motion for Summary Judgment," because the Statement is comprised of a series of 25 questions rather than statements.[230] In opposition, McDaniel asserts that all Local Rule 56.2 requires is "a separate and concise statement of the material facts which the opponent contends present a genuine issue," which he contends he

---

[224] *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981).

[225] *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000).

[226] *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 390 (5th Cir. 2007). *See also Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002); *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) ("The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive.").

[227] *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991).

[228] *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

[229] *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010).

[230] Rec. Doc. 56-2 at 1–2.

satisfied by (1) listing the disputed facts in the form of questions and (2) providing a thirteen page detailed summary of the material facts of the case.[231]

Local Rule 56.2 states that "[a]ny opposition to a motion for summary judgment must include a separate and concise statement of the material facts which the opponent contends present a genuine issue." Here, McDaniel attached a "Statement of Disputed Material Facts" to his opposition to Amtrak's Motion for Summary Judgment.[232] In his "Statement," McDaniel provides a series of questions where McDaniel asserts there are disputed material facts.[233] McDaniel also attached a separate "Response to Amtrak's Statement of Uncontested Material Facts," where McDaniel disputes many of Amtrak's 166 statements of allegedly uncontested material facts with references to evidence in the record.[234] Additionally, McDaniel included a thirteen page summary of alleged relevant facts in his opposition memorandum that McDaniel contends creates genuine disputed issues of material fact precluding summary judgment.[235] While McDaniel contends this collectively satisfies Local Rule 56.2, the Court notes that the Rule is clear: an opposition must include a "*separate* and *concise statement*" of material facts which McDaniel contends present a genuine issue.[236] A "statement" is an affirmative fact submitted in opposition to the motion for summary judgment; a question is not an undisputed fact. However, the Court finds that even taking

---

[231] Rec. Doc. 67 at 1–2.

[232] Rec. Doc. 52-4.

[233] *Id.*

[234] Rec. Doc. 52-5.

[235] Rec. Doc. 52 at 3–15.

[236] Local Rule 56.2 (emphasis added).

McDaniel's questions into consideration does not change the outcome of this Order. Accordingly, the Court denies Amtrak's motion to strike McDaniel's "Statement of Disputed Material Facts."[237]

## B.    *Amtrak's Motion for Summary Judgment*

In this motion, Amtrak argues that summary judgment should be granted because McDaniel has not presented any evidence that Amtrak discriminated against McDaniel based on his age, race, or gender, or in retaliation for filing complaints of discrimination with Amtrak and the EEOC.[238] In response, McDaniel contends that there are disputed issues of material fact precluding summary judgment on his claims that he was discriminated against when he was not selected for three positions at Amtrak: (1) Route Director Crescent, New Orleans; (2) Crew Base Manager, New Orleans; and (3) Onboard Services Manager, New Orleans.[239] McDaniel also contends that there are material issues of disputed fact precluding summary judgment on his disparate impact age discrimination claim.[240]

The Court first notes that McDaniel "waives his claims concerning the other selection decisions" and "concedes" that there is not sufficient evidence to support a claim for discrimination in his non-selection for six out of the nine positions to which he applied.[241] Accordingly, because McDaniel has not identified any evidence in the record that would support those claims, the Court will grant summary judgment on McDaniel's claims based on the following positions: (1) Assistant

---

[237] *See Greco v. Velvet Cactus, LLC*, No. 13-3514, 2014 WL 2943598, at *7 (E.D. La. June 27, 2014) (Vance, J.) ("Greco's objections are primarily minor disputes as to the proper way to characterize the facts and as such are not a proper basis for a motion to strike."). *See also Oiler v. Biomet Orthopedics, Inc.*, No. 02-3778, 2004 WL 325389, at *1 n.2 (E.D. La. Feb. 17, 2004) (Africk, J.) (finding that the court would not deem defendant's statement of undisputed facts "admitted" because, although the plaintiff failed to include statement of contested material facts as required by Local Rule 56.2, he specifically disputed certain facts in his opposition).

[238] Rec. Doc. 41-1.

[239] Rec. Doc. 52 at 20–22.

[240] *Id.* at 22.

[241] *Id.*

Superintendent of Passenger Services, Washington D.C.; (2) Onboard Service Manager, Chicago; (3) Senior Officer, Customer Service Standards; (4) Manager Food and Beverage Operations, New Orleans; (5) Assistant Superintendent, Miami; and (6) Onboard Service Manager, Chicago.

Next, the Court will address McDaniel's allegations of race, gender, and/or age discrimination and retaliation for each remaining position in turn. Both parties agree that claims for discrimination and retaliation under Title VII and Louisiana law are both governed by the same analysis.[242] Louisiana state courts and federal courts in the Fifth Circuit have repeatedly held the same.[243] Accordingly, the Court will address McDaniel's intentional discrimination claims under state and federal law on the basis of race, gender, and/or age, and for retaliation simultaneously.

Title VII prohibits discrimination in hiring or terminating an individual based on race, color, religion, sex, or national origin.[244] Allegations of intentional discrimination can be established using either circumstantial or direct evidence.[245] Likewise, Title VII "prohibits an employer from discriminating against an employee because she made a charge, testified, assisted, or participated in a Title VII investigation, proceeding, or hearing."[246] Ultimately, "Title VII

---

[242] *See* Rec. Doc. 41-1 at 11; Rec. Doc. 52 at 19.

[243] *DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007) ("Claims of racial discrimination in employment, pursuant to 42 U.S.C. § 1981 and the Louisiana Employment Discrimination Law, are governed by the same analysis as that employed for such claims under Title VII."); *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (stating that the outcome of plaintiff's statutory discrimination and retaliation claims will be the same under the federal and state statutes); *Motton v. Lockheed Martin Corp.*, 2003-0962 (La. App. 4 Cir. 3/2/05), 900 So. 2d 901, 909 ("Louisiana courts have looked to federal jurisprudence to interpret Louisiana discrimination laws."). *See also Minnis v. Bd. of Sup'rs of Louisiana State Univ. & Agric. & Mech. Coll.*, 55 F. Supp. 3d 864, 884–85 (M.D. La. 2014) (applying, without further discussion, the court's Title VII analysis to the plaintiff's state law claims and finding that he could not satisfy his burden of proving race discrimination and retaliation), *aff'd sub nom. Minnis v. Bd. of Sup'rs of Louisiana State Univ. & Agr. & Mech. Coll.*, 620 F. App'x 215 (5th Cir. 2015); *Stevenson v. Williamson*, 547 F. Supp. 2d 544, 551 (M.D. La. 2008) ("Therefore, the federal analysis applicable to plaintiff's Title VII claim also governs plaintiff's state law claims under La. R.S. 23:967 (Louisiana's anti-retaliation statute).").

[244] *Thomas v. Trico Prod. Corp.*, 256 F. App'x 658, 661 (5th Cir. 2007) (citing 42 U.S.C. § 2000e–2(a)(1)).

[245] *Johnson v. Maestri-Murrell Prop. Mgmt., LLC*, 487 F. App'x 134, 136 (5th Cir. 2012).

[246] *Smith v. Bd. of Supervisors of S. Univ.*, 656 F. App'x 30 (5th Cir. 2016) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) (quoting 42 U.S.C. § 2000e–3(a))) (internal quotation marks omitted).

retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged

employment action."[247]

Under the ADEA, it is "unlawful for an employer . . . to fail or refuse to hire or to discharge

any individual or otherwise discriminate against any individual with respect to his compensation,

terms, conditions, or privileges of employment, because of such individual's age."[248] When a

plaintiff alleges disparate treatment, "liability depends on whether the protected trait (under the

ADEA, age) actually motivated the employer's decision."[249] Courts in the Fifth Circuit analyze

discrimination claims and retaliation claims through the burden-shifting framework established by

the Supreme Court in *McDonnell Douglas Corp. v. Green*.[250] In order to state a valid claim under

the ADEA, the plaintiff "must prove, by a preponderance of the evidence that age was the 'but-

for' cause of the challenged adverse employment action."[251] Here, although McDaniel does not

allege he was discriminated against solely on the basis of age, he has pled each of his causes of

---

[247] *Minnis*, 55 F. Supp. 3d at 882 (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2521 (2013)), *aff'd sub nom. Minnis*, 620 F. App'x at 215.

[248] *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 141 (2000) (citing 29 U.S.C. § 623(a)(1)).

[249] *Id.* (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)).

[250] *Thomas*, 256 F. App'x at 661 (citing 411 U.S. 792 (1973)); *see Smith v. Bd. of Supervisors of S. Univ.*, 656 F. App'x 30 (5th Cir. 2016) ("Title VII retaliation claims based on circumstantial evidence are analyzed under the *McDonnell Douglas* burden-shifting framework. . . [c]laims for age discrimination under the ADEA are also evaluated under the *McDonnell Douglas* framework."); *Jones v. Overnite Transp. Co.*, 212 F. App'x 268, 272–73 (5th Cir. 2006) (stating that, "[a]bsent direct evidence of intentional race discrimination, a plaintiff must establish the following elements of a prima facie case under the *McDonnell Douglas* framework"); *Puleo v. Texana MHMR Ctr.*, No. 3:13-CV-00393, 2016 WL 3792746, at *6 (S.D. Tex. May 9, 2016) ("In Title VII sex discrimination cases, federal courts employ a burden-shifting framework first articulated by the Supreme Court in *McDonnell Douglas*."). *See also Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) ("Under this framework, the plaintiff must first create a presumption of discrimination by making out a prima facie case of discrimination. The burden then shifts to the employer to produce a legitimate, nondiscriminatory reason for her termination. This causes the presumption of discrimination to dissipate. The plaintiff then bears the ultimate burden of persuading the trier of fact by a preponderance of the evidence that the employer intentionally discriminated against her because of her protected status." (citations omitted)).

[251] *Griffin v. United Parcel Serv., Inc.*, No. 08-2000, 2010 WL 126229, at *2 (E.D. La. Jan. 8, 2010) (Barbier, J.). (citing *Gross v. FBL Financial Services, Inc.*, 129 S.Ct. 2343, 2352 (2009)).

action in the alternative.[252] Accordingly, the Court will consider McDaniel's age discrimination claims.

### a.      Route Director Crescent, New Orleans

McDaniel alleges that he was not selected for the position of Route Director because of his race, gender, and/or age in violation of Title VII and Louisiana law.[253] Amtrak asserts that summary judgment on McDaniel's Route Director position claim is warranted because Amtrak has articulated several non-discriminatory reasons for not selecting McDaniel for this position, and McDaniel has not identified any evidence that this decision was pretextual and was impermissibly based on race, gender, and/or age.[254]

### 1.      *Prima Facie Case of Discrimination*

First, McDaniel must establish a prima facie case of discrimination under the *McDonnell Douglas* framework by demonstrating that he: "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group."[255] Here, McDaniel, alleges that he is a white male who was 58 years old at the time he was not selected for the position of Route Director.[256] He presents evidence that he was qualified for the position, and states that

---

[252] *Id.* ("However, Defendant fails to acknowledge that Plaintiff has plead his causes of action in the alternative.") (citing Fed. R. Civ. Pro. 8(d)(2)). *See also Leal v. McHugh*, 731 F.3d 405, 415 (5th Cir. 2013) ("Appellants need not plead that age was the *sole* cause of their injury to survive a motion to dismiss." (emphasis in original)).

[253] Rec. Doc. 1 at 3, 8.

[254] Rec. Doc. 41-1 at 12.

[255] *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).

[256] Rec. Doc. 52 at 3–5.

Amtrak selected Anella Popo, a 41-year-old African American female, for the position instead.[257] McDaniel alleges that he was not selected for the position because he is a member of a protected race, gender, and/or age class.[258] It appears that Amtrak does not dispute that McDaniel has made out a prima facie case of discrimination.[259] Thus, the Court finds that McDaniel has established a prima facie showing that he was discriminated against on the basis of race, gender, and/or age in violation of Title VII and Louisiana law.

## 2.      *Legitimate, Nondiscriminatory Reasons for Employment Action*

Once the Court finds that McDaniel has made his prima facie showing, the burden shifts to Amtrak to articulate a legitimate, nondiscriminatory reason for its employment action.[260] Amtrak only bears the burden of production, not persuasion.[261] Here, Amtrak identifies several nondiscriminatory reasons for why McDaniel was not selected for the Route Director position. Amtrak asserts that Thomas Kirk, a 55-year-old white male, selected Anella Popo, a 41-year-old African American female, for the position because she interviewed well by providing past examples of relevant experiences and initiatives she had implemented at Amtrak and demonstrated an ability to lead.[262] Amtrak argues that Kirk, the decision maker, knew that Popo obtained a Master's Degree while working full time at Amtrak and was impressed with her work ethic.[263] Amtrak contends that McDaniel did not interview well, provided vague answers to interview

---

[257] *Id.* at 5.

[258] *Id.* at 20–21.

[259] *See* Rec. Docs. 41, 64.

[260] *McCoy*, 492 F.3d at 557.

[261] *Id.*

[262] Rec. Doc. 41 at 12–13.

[263] Rec. Doc. 64 at 3.

questions, failed to demonstrate that he had the experiences needed for the position, and failed to show that he had learned from his past mistakes.[264] Amtrak further avers that Kirk was familiar with McDaniel's leadership style and found it lacking, and knew that McDaniel had received negative feedback from other managers.[265]

As the Fifth Circuit has made clear, "[b]asing a promotion decision on an assessment of qualifications will almost always qualify as a legitimate, nondiscriminatory reason" sufficient to rebut a plaintiff's prima facie case.[266] Likewise, McDaniel concedes that Amtrak has met its burden of production and identifies six nondiscriminatory reasons proffered by Amtrak for its employment action.[267] Thus, the Court finds that Amtrak has satisfied its burden of producing evidence of legitimate, nondiscriminatory reasons for its decision not to select McDaniel for this position.[268]

### 3.      *Pretext for Discrimination*

Once the Court finds that Amtrak has met its burden of production, McDaniel then bears the final burden of producing "substantial evidence" to prove that the Amtrak's "proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose."[269] To defeat

---

[264] Rec. Doc. 41 at 13.

[265] *Id.*

[266] *Johnson v. Louisiana ex rel. Louisiana Bd. of Sup'rs for Louisiana State Univ. Agr. & Mech. Coll.*, 79 F. App'x 684, 689 (5th Cir. 2003); *Scales v. Slater*, 181 F.3d 703, 712 (5th Cir. 1999).

[267] Rec. Doc. 52 at 20–21.

[268] *Gregory v. Town of Verona, Miss.*, 574 F. App'x 525, 528 (5th Cir. 2014)(finding that not interviewing well and not displaying the same leadership ability as the selected employee are legitimate, non-discriminatory reasons to prefer one candidate over another); *Price v. Fed. Exp. Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) (stating that a plaintiff must produce evidence which, "*taken as true,* would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." (emphasis in original)) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)); *see, e.g., Gonzalez v. City of San Antonio*, No. 12-50472, 2013 WL 1149996, at *2 (5th Cir. Mar. 12, 2013) (finding that scoring lower during the interview process is sufficient evidence to establish a legitimate, nondiscriminatory reason for not hiring an individual).

[269] *McCoy*, 492 F.3d at 557 (citing *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000)); *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

summary judgment, McDaniel must rebut each of the nondiscriminatory reasons articulated by Amtrak.[270] Overall, McDaniel may establish pretext by showing that: (1) he was "clearly better qualified" than the person selected for the position; (2) Amtrak's "proffered reason was not the real reason for its employment decision," *i.e.* the explanations are false or "unworthy of credence;" or (3) that Amtrak was otherwise motivated by considerations of race, gender, and/or age.[271]

### i.    Whether McDaniel was "clearly better qualified" than Popo

First, McDaniel asserts that he has produced sufficient evidence demonstrating that he was "clearly better qualified" for the position of Route Director to defeat summary judgment.[272]  The Fifth Circuit has held that demonstrating that an unsuccessful employee applicant was "clearly better qualified" than the employee selected for a position is sufficient to establish pretext under the *McDonnell Douglas* framework.[273] "A fact finder can infer pretext if it finds that the employee was 'clearly better qualified' (as opposed to merely better or as qualified) than the employees who are selected."[274]  However, courts will not find pretext when the employer's "judgments on qualifications are somewhere within the realm of reason."[275]  Moreover, "[t]he fact that one

---

[270] *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 412 (5th Cir. 2007); *McCoy*, 492 F.3d at 557. *See* Rec. Doc. 52 at 19.

[271] *Gonzalez v. City of San Antonio*, No. 12-50472, 2013 WL 1149996, at *3 (5th Cir. Mar. 12, 2013)*; Burrell*, 482 F.3d at 412 (" Burrell has two methods available to him to try to prove that Dr. Pepper's proffered reason for failing to promote him was a pretext for racial discrimination: (1) Burrell could show that Dr. Pepper's proffered explanation is false or 'unworthy of credence'; or (2) Burrell could try to prove that he is 'clearly better qualified' than the person selected for the position."); *McCoy*, 492 F.3d at 557. *See* Rec. Doc. 52 at 19 (McDaniel stating that he can establish pretext through both methods of proof).

[272] Rec. Doc. 52 at 19 ("If Plaintiff demonstrates he is clearly better qualified, as we believe he will, then that in and of itself is enough to prove pretext."); *id.* at 21 ("The facts and exhibits alleges create, at the very least, an issue of material dispute facts as to whether Plaintiff was more and/or clearly more qualified for this position than the individual selected . . . .").

[273] *Price v. Fed. Exp. Corp.*, 283 F.3d 715, 723 (5th Cir. 2002)

[274] *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922–23 (5th Cir. 2010) (quoting *EEOC v. La. Office of Cmty. Servs.,* 47 F.3d 1438, 1444 (5th Cir. 1995)).

[275] *Churchill v. Texas Dep't of Criminal Justice*, 539 F. App'x 315, 321 (5th Cir. 2013).

candidate has 'better education, work experience, and longer tenure with the company do[es] not establish that he is clearly better qualified.'"[276] "[T]he bar is set high for this kind of evidence because differences in qualifications are generally not probative evidence of discrimination unless those disparities are 'of such weight and significance that no reasonable person . . . could have chosen the candidate selected over the plaintiff for the job in question.'"[277] "Unless the qualifications are so widely disparate that no reasonable employer would have made the same decision, any differences in qualifications are generally not probative evidence of discrimination."[278]

According to its original job posting, the Route Director for Crescent/City of New Orleans is responsible for "one or more long-distance train routes including financial, customer satisfaction, ridership and revenue, safety, and overall business line goals."[279] The Route Director is also responsible for "profit and loss of the route[s] by overseeing all field operations and directing business planning and decision making."[280] Other essential responsibilities include creating a "safe and secure work environment," providing customer service, managing a budget and expenditures, and closely corroborating with other employees.[281] The position also requires a Bachelor's Degree or an equivalent combination of education, training, and experience, and lists a Master's Degree in a relevant business field as its preferred education.[282] The required work

---

[276] *Id.* (citing *Price*, 283 F.3d at 723).

[277] *Gregory v. Town of Verona, Miss.*, 574 F. App'x 525, 529 (5th Cir. 2014) (quoting *Celestine v. Petroleos de Venezuela SA*, 266 F.3d 343, 357 (5th Cir. 2001)).

[278] *Moss*, 610 F.3d at 923 (quotation marks and citations omitted).

[279] *See* Rec. Doc. 41-7 at 4.

[280] *Id.*

[281] *Id.* at 5.

[282] *Id.* at 6.

experience section includes "[s]ignificant leadership, customer service and financial management experience," as well as experience in operating a budget, advanced leadership and management skills, and an ability to effectively facilitate change and innovative approaches.[283]

Moreover, according to Thomas Kirk, the decision maker, he was "most interested in finding a candidate who had demonstrated business acumen in order to successfully handle budgetary responsibilities, oversee profit and loss, oversee union and management employees and collaborate with other departments providing services to New Orleans."[284] Kirk also states that the Route Director job had some of the responsibilities of the former Assistant Superintendent position, but also included "more responsibility and accountability for profit and loss of the assigned routes."[285] Kirk asserted that he was looking for a candidate who was "willing to make changes, encourage the employees to accept those changes in a positive way and look at the process and think of ways to implement changes in order to save the routes money and effect the bottom line."[286] The candidate needed to be able to take initiative and proactively come up with ideas, projects, and plans to be implemented.[287]

McDaniel, a 58-year-old male at the time of the selection, asserts that he was qualified for the position of Route Director, and that the position was filed "by someone 17 years younger, black and female" and, according to McDaniel, substantially less qualified than he was for the position.[288] According to McDaniel, the duties and responsibilities of the Route Director were

---

[283] *Id.*

[284] Rec. Doc. 41-9 at 2.

[285] *Id.*

[286] *Id.*

[287] *Id.*

[288] Rec. Doc. 52 at 20.

"substantially the same" as McDaniel's prior position as Assistant Superintendent, with the additional responsibility for overseeing the profit and loss of the budget.[289] However, McDaniel avers that he was previously responsible for managing a $24,000,000 budget, and the Route Director position had a smaller geographical territory, one less train, and fewer managers and employees to supervise as he had as Assistant Superintendent.[290] McDaniel also contends that he was an "exemplary" employee with 25 years of service, "strong" performance evaluations, and no record of being disciplined.[291]

According to McDaniel, Popo had less work experience with Amtrak than McDaniel did.[292] McDaniel points out that Popo was 17 years younger and worked in non-management positions from 1995 to 2007, while McDaniel had managerial responsibility from 2002 to 2006 until he was promoted to Assistant Superintendent.[293] Moreover, McDaniel argues that Popo's first management position was as Manager of Stations in D.C., which reports to an Assistant Superintendent, the same position that McDaniel had.[294] McDaniel asserts that in 2011, Popo was transferred to a new position in Miami where she did not supervise management employees and was only responsible for a budget of $9,000,000, as opposed to McDaniel's management of a $24,000,000 budget for seven years.[295] Thus, McDaniel argues that Popo did not supervise any non-agreement management employees two years prior to being selected for the Route Director

---

[289] *Id.* at 3.

[290] *Id.*

[291] *Id.* at 3–4.

[292] *Id.* at 5–6.

[293] *Id.* at 5.

[294] *Id.*

[295] *Id.*

position and only had four years of experience managing non-agreement management employees, as opposed to his "highly successful and consecutive total of eleven years in management."[296]

Here, the evidence produced by McDaniel does not support his argument that he was *clearly* better qualified than Popo such that "no reasonable person . . . could have chosen the candidate selected over the plaintiff for the job in question.'"[297] Kirk stated that he selected Popo because, during her interview, "she provided solid examples of her experience and ability to lead various teams, identified initiatives she had taken to improve financial performance in her department, and explained how she had implemented change that resulted in minimal disruption of services and minimal dissatisfaction of employees."[298] These qualifications identified by Kirk match the qualifications listed in the job positing for the Route Director position, such as an ability to lead, innovate, and make financial changes.[299] Kirk also states that he knew Popo had completed a Master's Degree while working full time, which he believed demonstrated a strong work ethic and ability to multi-task.[300] Moreover, both Popo and McDaniel had managerial experience at Amtrak, and although Popo was working at one managerial level below McDaniel at the time of the selection, Kirk states that he believed they had similar managerial experience because Popo had filled in as a manager at McDaniel's level for six months at the "particularly busy" Washington, D.C. station.[301]

---

[296] *Id.* at 6.

[297] *Gregory v. Town of Verona, Miss.*, 574 F. App'x 525, 529 (5th Cir. 2014) (quoting *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 357 (5th Cir. 2001)).

[298] Rec. Doc. 41-2 at 4.

[299] *See* Rec. Doc. 41-7 at 4–5.

[300] Rec. Doc. 41-9 at 3.

[301] *Id.* at 4.

McDaniel argues that, while Popo had a Masters of Business Administration, a Master's Degree was only listed under the "Preferred Education" section for the position, but only a Bachelor's Degree or "the equivalent combination of education and training/experience" was listed under "Requirements."[302] McDaniel avers that he had an Associate's Degree in business, studied finance at George Washington University, and had 25 years of experience at Amtrak, and that a Master's Degree was clearly not necessary as Thomas Kirk himself, who only holds a Bachelor's Degree in political science, was selected to be Deputy General Manager in 2013.[303] However, McDaniel offers no evidence that his Associate's Degree combined with his years of experience makes him "clearly better qualified" than an applicant holding an MBA. Moreover, McDaniel fails to address the fact that Kirk stated that the MBA was relevant to his decision because he believed obtaining an MBA while working full time displayed a strong work ethic.[304]

McDaniel also asserts that there are inconsistencies between Popo's resume and deposition testimony concerning when she obtained her MBA.[305] For example, McDaniel alleges that in Popo's deposition, she said she was living in Fredericksburg, Virginia, while working on her Master's Degree at Strayer University until July 2013, but was also allegedly living in Miami from 2011 to 2013 while working full time for Amtrak.[306] Thus, McDaniel contends that there is a material issue of disputed fact regarding "what Mr. Kirk, the decision maker, should or could have reasonably believed about what Ms. Popo had truly been doing educationally and career wise in

---

[302] Rec. Doc. 52 at 7–8.

[303] *Id.* at 8.

[304] Rec. Doc. 41-9 at 3.

[305] Rec. Doc. 52 at 8–9.

[306] *Id.*

the two or three years leading up to her selection."[307] However, Kirk testified that he believed obtaining a Master's Degree while working full time demonstrated a strong work ethic, and McDaniel has not presented any evidence that Kirk knew about any inconsistencies regarding Popo's education at the time he made his selection. Moreover, the Court notes that McDaniel creates such an "inconsistency" by citing to portions of Popo's deposition where Popo was discussing her *Bachelor's Degree*, not her Master's Degree, and references other pages of Popo's deposition that were omitted from McDaniel's exhibits.[308] Additionally, McDaniel's evidence of alleged inconsistencies in Popo's educational background does not establish that McDaniel was clearly more qualified than Popo in light of her other qualifications, or that Kirk's decision was based on age, race, or gender. Moreover, the Court notes that McDaniel does not provide any supporting evidence for his allegation that Amtrak's preference for a Master's Degree was meant to eliminate older job candidates, and merely relies on his own supposition and conjecture. Such pure speculation, without pointing to any evidence in the record, is insufficient to establish pretext.[309]

The additional evidence that McDaniel points to also does not establish that he is "clearly better qualified" for the position. For example, McDaniel points to the performance reviews of both candidates, which show that McDaniel had more experience and responsibilities than Popo

---

[307] *Id.* at 9.

[308] *See* Rec. Doc. 52 at 8–9 (McDaniel arguing in his opposition memorandum that Popo "claimed that she was living in Fredericksburg at the time she studied for her Masters."); Rec. Doc. 52-3 at 6–9 (Popo stating in her deposition that she was living in Fredericksburg at the time she was studying for her bachelor's degree). The Court notes that McDaniel also cites to page 40 of Popo's deposition, but fails to include it in the attached exhibit. *See* Rec. Doc. 52-3 at 6–7 (skipping from page 39 to 41).

[309] *See Reynolds v. Sovran Acquisitions, L.P.*, 650 F. App'x 178, 184 (5th Cir. 2016) (finding that a plaintiff's "unsubstantiated and subjective beliefs and opinions regarding good employment practices are insufficient to create a genuine fact issue.") (citations and quotation marks omitted); *Ramsey v. Henderson,* 286 F.3d 264, 269 (5th Cir. 2002) ("[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden on a motion for summary judgment.").

did.[310] However, the reviews also show that both candidates received the same overall scores, and Popo's performance review contains significant praise regarding her managerial skills, including her ability to aggressively make changes, improve service to customers, ensure a safe and clean working environment, and other efforts to make improvements.[311] More importantly, Kirk stated that he did not consider the performance reviews in making his decision.[312] McDaniel has not identified any evidence that the performance reviews were considered by Kirk or that this establishes that McDaniel is clearly better qualified than Popo.

McDaniel also points to a letter of recommendation from Allan Paul, the Deputy Director of the North Carolina Department of Transportation Rail Division, which states that, in Paul's opinion, McDaniel was "a very highly qualified candidate" for the position.[313] However, including a letter of recommendation to his application from a colleague not involved in the selection process does not provide a sufficient basis for this Court to find that McDaniel was "clearly better qualified" than Popo.

Next, McDaniel points to the testimony of former Amtrak employee Bruce Mullins, who stated that, based upon his "experience and observations through the years" at Amtrak, McDaniel was a better manager than Popo.[314] Mullins states that McDaniel knew more about Amtrak than any other manager Mullins worked with, was an effective leader, accessible, a good mentor, and

---

[310] Rec. Doc. 52 at 6–7.

[311] *See* Rec. Doc. 52-3 at 16–18 ("This is Anella's first year as a manager in the division, but few people would know because she aggressively went about making changes that certainly improved service to customers and providing employees with all tools needed to properly perform there [sic] duties.").

[312] Rec. Doc. 41-9 at 2.

[313] Rec. Doc. 52-2 at 81.

[314] Rec. Doc. 52-3 at 47–49.

had a good working relationship with his colleagues.[315] By contrast, Mullins contends that Popo was "not as skilled, experienced, or temperamentally suited to her position" as McDaniel had been.[316] For example, Mullins states that: Popo moved her office to a different building "so that she would not be as accessible to the employees;" did not work as long hours as McDaniel did; would act "in a disrespectful and condescending manner;" did not dress appropriately for the workplace and would wear "skirts that were too short and distracting to employees;" did not display good leadership skills; had difficulty obtaining what she needed from other departments; and that employees took pictures of her and laughed at her.[317]

However, even accepting all of Mullins' accusations against Popo as true, Mullins' affidavit does not establish that McDaniel was "clearly better qualified" than Popo. At best, Mullins' testimony would establish that McDaniel was better qualified than Popo in some areas, but his statements, such as that Popo was "not *as* skilled, experienced, or temperamentally suited" to be Route Director, does not show that Popo was so less qualified or McDaniel was so much more qualified as to establish pretext. Merely being less qualified or less respected than the non-selected candidate is insufficient to rebut Amtrak's legitimate, nondiscriminatory reasons for selecting Popo, as McDaniel must establish that he was "clearly" better qualified than Popo to succeed on his discrimination claim. McDaniel has not done so here, nor could a reasonable jury find that he was.

More importantly, Mullins was not the decision maker in this position, and McDaniel has not presented any evidence that Kirk knew about Mullins' opinion or that Mullins' opinion was

---

[315] *Id.* at 48.

[316] *Id.*

[317] *Id.* at 48–49.

shared by other Amtrak employees and managers. In *Gregory v. Town of Verona, Miss.*, the Fifth

Circuit held that the testimony of a non-voting member of a hiring committee that he "felt" that

race may have been a factor in a plaintiff's non-selection is "not competent evidence that race

actually was a motivating factor in the hiring decision," as "mere opinions, with *no* supporting

evidence" are insufficient to support a claim of discrimination.[318] Likewise, in *Bright v. GB

Bioscience Inc.*, the Fifth Circuit found that producing evidence of a "few supporters who vouch

for [plaintiff's] performance" was insufficient to preclude summary judgment.[319] Here, Mullins'

testimony is even less supportive of McDaniel's discrimination claim, as Mullins offers no

testimony or evidence regarding the motivating factors of the decision makers.

Finally, McDaniel also avers that Kirk's interview notes demonstrate that there was

"nothing more impressive" about Popo's responses that would "justifiability outweigh or

compensate" for Popo's lack of experience and knowledge for this position.[320] Even accepting this

as true, such evidence does not establish that McDaniel was "clearly better qualified." Moreover,

McDaniel has not presented any evidence that Kirk's handwritten interview notes contradict Kirk's

testimony that Popo interviewed well and fit the qualifications of Route Director or that Kirk's

application and interview was deficient in multiple ways.

Accordingly, considering together all the evidence McDaniel has presented on this motion

for summary judgment, the Court finds that McDaniel has not created a genuine issue of material

fact regarding pretext by meeting the "high bar" of showing that he was "clearly better qualified"

---

[318] 574 F. App'x 525, 529 (5th Cir. 2014).

[319] 305 F. App'x 197, 205 (5th Cir. 2008).

[320] Rec. Doc. 52 at 10.

than Popo for the position of Route Director.[321] Popo had several years of managerial experience at Amtrak, including as a manager at the Washington, D.C. station for six months, identified past experiences and accomplishments that matched those qualifications needed in a Route Director, and had impressed Kirk by obtaining a Master's Degree, a greater level of education than McDaniel had, while working full time. Amtrak also pointed to evidence that Kirk knew of McDaniel's leadership style and found it lacking, as McDaniel had received negative feedback from other mangers and did not provide mentoring or guidance to his team.[322] Amtrak further alleges that Kirk believed McDaniel had not learned from past mistakes and had not progressed or changed.[323] While McDaniel appears to have also been qualified for the position, "[t]he fact that one candidate has 'better education, work experience, and longer tenure with the company do[es] not establish that he is clearly better qualified.'"[324]

Moreover, the evidence pointed to is clear that an applicant's years of experience was not the only factor in Kirk's decision, and that he sought other key qualities that he identified in Popo.[325] The Court notes that Popo clearly "met the minimum job qualifications and had her own array of qualifications and certifications not considered or accounted for by [McDaniel]."[326] In

---

[321] *Gregory v. Town of Verona, Miss.*, 574 F. App'x 525, 529 (5th Cir. 2014).

[322] Rec. Doc. 41-1 at 13.

[323] *Id.*

[324] *Churchill*, 539 F. App'x at 321 (citing *Price*, 283 F.3d at 723). *See also Gregory*, 574 F. App'x at 529 (finding that it is not sufficient to show that two applicants had "comparable levels" of certification and experience or that the two applicants were "similarly qualified").

[325] *See Rowe v. Jewell*, 88 F. Supp. 3d 647, 670 (E.D. La. 2015) (Wilkinson, Mag.) (affirming summary judgment for defendant when plaintiff had more years of experience and more formal education than successful job applicant, but successful candidate outperformed plaintiff on the job interview, which defendant cited as the most important criterion for the job, and the selecting official stated that years of experience and formal education were "not the best indicators of who will make the best training instructor" and that these qualifications "are 'of little consequence'") (citing *Churchill*, 539 Fed. App'x at 320).

[326] *Id.*

52

other words, McDaniel's qualifications are "not so superior to those of the selectee[] to allow an inference of pretext,"[327] and it is clear that Kirk's "judgments on qualifications are somewhere within the realm of reason" sufficient to prevent a finding of pretext by a reasonable jury.[328] As the Fifth Circuit has previously stated, employers "are generally free to weigh the qualifications of prospective employees, so long as they are not motivated by [race, gender and/or age]."[329] Considering all the evidence identified by McDaniel, the Court cannot find that the alleged disparities between Popo's and McDaniel's qualifications are "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question."[330] Accordingly, the Court finds that McDaniel has not raised a genuine issue of fact regarding pretext or created an inference of discriminatory intent by showing he was "clearly better qualified" for the position than Popo such that "no reasonable employer would have made the same decision."[331]

### ii. Whether Amtrak's proffered reasons are false or Amtrak was otherwise motivated by race, gender, and/or age

Second, McDaniel argues that he has established pretext by showing that Amtrak's proffered reasons were not the real reasons for the decision not to select McDaniel for the position of Route Director.[332] To prove that each of Amtrak's stated reasons are false, McDaniel must point to "substantial" evidence "to support a reasonable inference that the proffered reason is false; a

---

[327] *E.E.O.C. v. Louisiana Office of Cmty. Servs.*, 47 F.3d 1438, 1445 (5th Cir. 1995).

[328] *Churchill*, 539 F. App'x at 321.

[329] *Martinez v. Texas Workforce Comm'n-Civil Rights Div.*, 775 F.3d 685, 688 (5th Cir. 2014).

[330] *Bright v. GB Bioscience Inc.*, 305 F. App'x 197, 205 (5th Cir. 2008).

[331] *Id.* at 687 ("We have held that a plaintiff may establish pretext by demonstrating that he was 'clearly better qualified' such that 'the qualifications are so widely disparate that no reasonable employer would have made the same decision.'" (quoting *Moss v. BMC Software, Inc.*, 610 F.3d 917, 923 (5th Cir. 2010)).

[332] Rec. Doc. 52 at 2.

mere shadow of a doubt is insufficient."[333] "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action."[334] The Court further notes that a plaintiff alleging a disparate treatment claim may also survive summary judgment by pointing to evidence showing that the employer's reasons, while true, are not the only reasons for its conduct, and another motivating factor was the plaintiff's protected characteristics.[335] Although McDaniel did not specifically assert both arguments, the Court will consider both approaches together.

Here, McDaniel argues Amtrak's proffered reasons are false or unworthy of credence by pointing to much of the same evidence discussed *supra*. McDaniel contends that he was more qualified than Popo and had more experience relevant to the position than Popo had.[336] McDaniel also points to his and Popo's performance reviews, Allan Paul's letter of reference, and Bruce Mullins' affidavit as evidence that he was more qualified than Popo for the position and that Amtrak's reasons are false.[337] However, as the Court stated *supra*, merely having greater experience at Amtrak or presenting the opinions of other individuals who were not the decision makers here is insufficient to demonstrate that each of Amtrak's stated legitimate, nondiscriminatory reasons are pretext, or to establish that Amtrak was otherwise motivated by McDaniel's protected characteristics.

---

[333] *E.E.O.C.*, 47 F.3d at 1443–44.

[334] *Laxton v. Gap Inc.*, 333 F.3d 572, 578–79 (5th Cir. 2003) (citing *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002)).

[335] *Reynolds v. Sovran Acquisitions, L.P.*, 650 F. App'x 178, 180–81 (5th Cir. 2016) (quoting *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007)). The Court further notes that McDaniel's ADEA claim must satisfy a slightly different burden by showing that, even if the employer's stated reasons are true, McDaniel was not hired for this position *because of* his age. *See Reynolds v. Sovran Acquisitions, L.P.*, 650 F. App'x 178, 181 (5th Cir. 2016) (citing *Miller v. Raytheon Co.*, 716 F.3d 138, 144 (5th Cir. 2013)).

[336] Rec. Doc. 52 at 21.

[337] *Id.* at 3–11, 21.

Additionally, McDaniel argues that Kirk's assertion that Popo interviewed well and that McDaniel did not is false, as Kirk's interview notes show that "there was nothing more impressive about Ms. Popo's responses that would justifiably outweigh or compensate for the very evident lack of experiential preparation and knowledge for this position."[338] Thomas Kirk testified during his deposition that he would take handwritten notes during the interviews of each applicant, and did so for McDaniel and Popo.[339] Although Kirk's handwriting is difficult to read, McDaniel had Kirk read his notes out loud during his deposition.[340] However, McDaniel has not identified any part of McDaniel's notes that contradict his deposition testimony that Popo interviewed well and provided concrete examples of relevant experiences that Kirk was looking for, while McDaniel did not interview well and only provided vague answers to the panel's questions. Indeed, McDaniel testified during his deposition that he did not remember any of his answers to any of the interview questions.[341] Rather, Kirk's interview notes for Popo provide support for the qualities Kirk identified as reasons he selected her for the position; for example, it states that Popo has a "Master degree MBA;" that "customer service at Washington as stationed exceeded 200 employees. Very busy;" "looked at ways to save money and keep employees;" and "cut cost for 100, arrow, 20 miles."[342] Additionally, Kirk testified that he "didn't write down everything" he heard during the interview, and offered a more in-depth explanation of his perception of the two interviewees in his deposition.[343] In *Rowe v. Jewell*, another court of the Eastern District of Louisiana found that

---

[338] *Id.* at 9–10, 21.

[339] *See* Rec. Doc. 52-2 at 12–13.

[340] *Id.*

[341] Rec. Doc. 41-4 at 28.

[342] *Id.* at 25–27.

[343] *Id.* at 31.

defendant's destruction of interview notes was insufficient to establish pretext when he had extensively explained the interview results through deposition testimony.[344] Similarly, here the Court finds that the existence of handwritten notes that partially corroborate, and do not directly contradict, Kirk's testimony does not support McDaniel's claim of pretext.

McDaniel also points to a document titled "Candidate Selection Justification" for Route Director completed by Kirk, which lists the race and gender of each applicant and the birthday of every applicant except for McDaniel.[345] McDaniel alleges that the fact that Amtrak "requires" its decision-makers to complete the form and that the justification information includes race, gender, and birthdays is circumstantial evidence that Amtrak "either directly or tacitly encouraged" its decision makers to consider such factors.[346] McDaniel points out that Kirk stated he did not know why the form identifies candidates based on their race and gender.[347] McDaniel also contends that there is a factual dispute here because Kirk filled out the form whereas another witness testified that the form is normally completed by a Human Capital representative.[348] However, Amtrak has introduced evidence that the Candidate Justification Form is not required to be filled out and was not used in making the selection of Popo over McDaniel, and that Amtrak is legally required to track the races and genders of candidates who interview for positions.[349] McDaniel does not present any contradicting evidence that the Candidate Selection Justification form was used to make Kirk's decision or that Amtrak was not legally required to track certain demographic

---

[344] *Rowe*, 88 F. Supp. 3d at 665.

[345] Rec. Doc. 52 at 10.

[346] *Id.*

[347] *Id.*

[348] *Id.*

[349] Rec. Doc. 41-2 at 23.

information about applicants. Instead, he merely states these facts are "disputed" without any citations to evidence in the record to support his unsubstantiated allegation that they support a claim of pretext.[350]

While McDaniel argues that the fact that Kirk completed the form and not a Human Capital representative creates a factual dispute, McDaniel does not explain why this would be a genuine dispute of *material* fact to preclude summary judgment.[351] Even taking McDaniel's insinuation as true that Kirk was not supposed to complete this form does not demonstrate why his stated reasons for hiring Popo amount to pretext. Moreover, while the birthdays for each candidate interviewed are listed, ranging in ages from 42 years old to 59 years old, it does not state McDaniel's birthday.[352] Additionally, the Court notes that the Candidate Selection Justification form for the position of Route Director includes a separate section for "Selection Justification," which does not state Popo's age, race, and/or gender was a consideration.[353] Instead, it reiterates the same reasons for why Popo was selected as stated *supra*; for example, it states that she demonstrated her overall experience in leadership, is highly innovative in problem solving, understands Amtrak's budgetary process, and has a strong educational background in finance, leadership, organizational behavior, and general business processes.[354]

McDaniel points to several more pieces of circumstantial evidence to argue that Amtrak's stated reasons for selecting Popo are false. For example, McDaniel avers that Amtrak's job description for Route Director stated that a Master's Degree was the preferred education level, and

---

[350] Rec. Doc. 52-5 at 9–10.

[351] *Reynolds v. Sovran Acquisitions, L.P.*, 650 F. App'x 178, 182 (5th Cir. 2016).

[352] Rec. Doc. 52-2 at 35.

[353] *Id.*

[354] *Id.*

argues that this was "essentially code for a mandate to managers to hire . . . younger employees."[355]

However, McDaniel does not point to any evidence in the record or case law supporting this allegation. Even accepting as true McDaniel's unsubstantiated representation that it is a "rare event" for a long-term Amtrak employee to have earned an MBA, this does not establish that Kirk's proffered reasons for selecting Popo are pretext for age discrimination.[356] As stated *supra*, McDaniel also calls into question whether Popo was truthful about receiving an MBA by citing parts of the record where Popo discusses her Bachelor's Degree in her deposition; however, McDaniel does not offer any evidence that Kirk knew about any inconsistencies in her educational history, or that Popo did not actually obtain an MBA, and McDaniel does not explain how this rebuts Amtrak's other explanations for selecting Popo over McDaniel.[357] Rather, all McDaniel offers here are vague, unsubstantiated insinuations that fail to raise a genuine dispute of material fact regarding pretext or create an inference of discriminatory intent. "Simply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext."[358] Moreover, the issue here is not whether Kirk may have been correct in his view that Popo displayed strong work ethic by obtaining an MBA while working full time, but only whether Amtrak did not select McDaniel for this position because of a discriminatory reason.[359]

---

[355] Rec. Doc. 52 at 8.

[356] *Id.*

[357] *Id.* at 8–9.

[358] *LeMaire v. Louisiana Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007) (finding that the plaintiff's denial that she was sleeping on the job when other employers stated she was does not establish pretext, as the court will not second-guess an employer's decision to disbelieve the plaintiff's explanation).

[359] *Palacios v. City of Crystal City, Tex.*, 634 F. App'x 399, 404 (5th Cir. 2015) ("The issue is not whether the city council's view that Palacios's performance was poor was correct, but only whether it terminated her because of its dissatisfaction with her performance or because of a discriminatory reason.").

Additionally, McDaniel points out that Amtrak changed its retirement plans after the reorganization, and argues that Amtrak could reduce its costs by intentionally lowering the ages of its employees through the "purportedly neutral reorganization."[360] However, McDaniel points to no evidence that Amtrak carried out the 2013 RIF with the goal of reducing benefits costs by lowering the age of employees. McDaniel has also not provided any evidence that the 2013 RIF was connected with Amtrak's plans to change retirement benefits. More fundamentally, McDaniel has not offered any proof that the changes in the retirement plans demonstrate that Kirk's stated nondiscriminatory reasons for hiring Popo instead of McDaniel were false or unworthy of credence or that Kirk otherwise made his decision based on the ages of the applicants.

McDaniel also points to two articles in Amtrak's monthly publication, "Amtrak Ink," which included positive articles about younger employees.[361] For example, in August 2013, the "Amtrak Ink" included an article titled "Amtrak Recognizes Under-40 Employees," while the September 2013 edition had an article on "Younger Influencers: Integral Part of the Amtrak Multigenerational Team."[362] However, in *Bennett v. Total Minatome Corp.*, the Fifth Circuit rejected a similarly, albeit stronger, argument.[363] There, the defendant had published an article quoting the chairman of the board of directors as saying "[i]t is our intention to continue recruitment, but at a more moderate rate, focusing exclusively on young people."[364] As the Fifth Circuit explained, this comment "cannot service as evidence of age discrimination because it does

---

[360] Rec. Doc. 52 at 11.

[361] *Id.*

[362] *Id.*

[363] 138 F.3d 1053, 1061 (5th Cir. 1998).

[364] *Id.*

not refer in any way to Bennett's age or the employment decisions of which he complains."[365] Here, McDaniel's evidence that Amtrak's monthly publication included positive articles on younger employees does not establish pretext or support his claim that his age was the "but for" cause of McDaniel not selecting him for Route Director. Neither article mentions McDaniel's age, and McDaniel has not pointed to any portion of the articles that suggest Kirk may have been motivated by age in choosing Popo instead.

McDaniel also points out that Amtrak took almost six months to respond to his internal complaint regarding the alleged discrimination against him;[366] however, McDaniel filed his internal complaint of discrimination on December 23, 2013, *after* and with regard to his non-selection for the Route Director position.[367] McDaniel does not explain how a delay in investigating a complaint made after the selection process demonstrates that Amtrak's proffered reasons are pretext. McDaniel also alleges that Kirk told Amtrak's Senior EEO Compliance Officer that, to his knowledge, McDaniel was not meeting expectations and received "low 2s" in his performance reviews, rather than his assertion that he "consistently received high performance reviews."[368] McDaniel argues that Kirk had to review and approve McDaniel's performance reviews that had higher scores than "low 2s," and thus this is "clear evidence of a lack of candor and pretext."[369] However, as stated *supra*, McDaniel has not presented any evidence that Kirk or the interview panel considered the applicants' performance reviews while making their selection, and Amtrak has presented uncontroverted evidence that the performance reviews were not

---

[365] *Id.*

[366] Rec. Doc. 52 at 13.

[367] *Id.*

[368] *Id.* at 13–14.

[369] *Id.* at 14.

considered.[370] Again, McDaniel does not explain how Kirk's "disingenuous statement to the internal EEO investigation that he doesn't know how he knows about Plaintiff's evaluation and his misrepresentations about their content"[371] would rebut each of Kirk's legitimate nondiscriminatory reasons to establish pretext, or show that Kirk was motivated by race, gender, and/or age. To survive summary judgment, McDaniel cannot simply point to any factual disputes in the record; rather, as the Fifth Circuit has held, McDaniel must point to evidence that raises a "genuine dispute as to *material* fact."[372]

### iii.    Conclusion

Considering all of McDaniel's evidence presented, the Court finds that McDaniel has failed to rebut each of Amtrak's legitimate, nondiscriminatory reasons for selecting Popo for the position of Route Director under either theory asserted by McDaniel. As conceded by McDaniel, Amtrak identified at least six reasons for why it selected Popo over McDaniel, including Popo's several years of management experience, work ethic, and strong interview performance as well as McDaniel's failure to interview well.[373] McDaniel argued in response that these reasons were pretextual because he was clearly better qualified than Popo for the position, or because the evidence presented cumulatively showed that Amtrak's stated reasons were false or unworthy of credence.[374]

However, for the reasons stated *supra*, McDaniel's evidence is not sufficient to raise a genuine dispute of material fact regarding Amtrak's stated reasons or that Amtrak was motivated

---

[370] Rec. Doc. 65 at 3; Rec. Doc. 41-2 at 3.

[371] Rec. Doc. 52 at 21.

[372] *Reynolds v. Sovran Acquisitions, L.P.*, 650 F. App'x 178, 182 (5th Cir. 2016).

[373] Rec. Doc. 52 at 20–21.

[374] *Id.* at 2–3.

by considerations of race, gender, and/or age. As the Fifth Circuit has repeatedly stated, the "mere fact that an employer uses subjective criteria is not . . . sufficient evidence of pretext."[375] Moreover, the Court notes that the decision maker here, Kirk, was part of the same protected race, gender, and age class as McDaniel. The Fifth Circuit has held that when the decision maker is of the same protected class as the plaintiff, it is "less likely that unlawful discrimination was the reason for the discharge."[376] Therefore, the Court finds that McDaniel has failed to produce sufficient evidence to rebut Amtrak's legitimate, nondiscriminatory reasons to establish pretext, or point to other evidence sufficient to support an inference that Amtrak discriminated against McDaniel.[377] McDaniel's subjective belief that race, gender, and/or age was a motivating factor in his nonselection for the position of Route Director finds insufficient support in the record.[378] Amtrak has produced substantial evidence demonstrating that there is no genuine dispute of material fact that no discrimination occurred, and, at best, McDaniel "has raised only a weak issue of fact and therefore cannot survive summary judgment."[379] Accordingly, the Court will grant summary

---

[375] *Churchill*, 539 F. App'x at 320; *Manning*, 332 F.3d at 882.

[376] *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 1002 (5th Cir. 1996) *abrogated on other grounds by Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133 (2000); *see Easterling v. Tensas Par. Sch. Bd.*, No. 14-0473, 2016 WL 1452435, at *6 (W.D. La. Apr. 13, 2016) ("Finally, the Court notes that the decision maker (Johnson) and Easterling are both members of the same protected class which further supports the conclusion that discriminatory animus did not taint Tensas' hiring decisions."); *Agoh v. Hyatt Corp.*, 992 F. Supp. 2d 722, 744 (S.D. Tex. 2014) ("When decision makers are in the same protected class as the plaintiff, there is a presumption that unlawful discrimination is not a factor in the discharge.").

[377] *Laxton*, 333 F.3d at 579–80 ("Our concern is whether the evidence supports an inference that Gap intentionally discriminated against Laxton, an inference that can be drawn if its proffered reason was not the real reason for discharge.").

[378] *Churchill*, 539 F. App'x at 320–21.

[379] *Id.* (quotation marks and citations omitted). *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 148 (2000) ("[A]n employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.").

judgment in favor of Amtrak on McDaniel's claims of race, gender, and/or age discrimination for the Route Director Position.

### b.    Crew Base Manager, New Orleans

McDaniel alleges that he was not selected for the position of Crew Base Manager because of his race, gender, and/or age[380] or in retaliation for filing an EEOC claim in violation of Title VII and Louisiana law.[381] Amtrak asserts that summary judgment on McDaniel's Crew Base Manager position claim is warranted because Amtrak has articulated several non-discriminatory reasons for not selecting McDaniel for this position, and McDaniel has not identified any evidence that this decision was pretextual and was impermissibly based on race, gender, and/or age.[382] Courts in the Fifth Circuit analyze allegations of both employment discrimination and retaliation under the *McDonnell Douglas* burden-shifting framework.[383] Accordingly, the Court will address all of McDaniel's discrimination claims regarding the Crew Base Manager position simultaneously, and will address McDaniel's retaliation claim and additional evidence separately *infra*.

### 1.    *Prima Facie Case of Race, Gender, and/or Age Discrimination*

First, McDaniel must establish a prima facie case of discrimination under the traditional *McDonnell Douglas* framework by demonstrating that he: "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse

---

[380] In McDaniel's Opposition memorandum, McDaniel does not allege he was discriminated against because of age for the Crew Base Manager position. Rec. Doc. 52 at 21. Amtrak interprets this as McDaniel waiving his age discrimination claim. Rec. Doc. 64 at 5. However, because McDaniel's complaint alleges age discrimination generally, and because McDaniel does not explicitly state he waives his age discrimination claim for the Crew Base Manager position, the Court will proceed as if McDaniel has alleged age discrimination here as well.

[381] Rec. Doc. 1 at 6.

[382] Rec. Doc. 41-1 at 21.

[383] *See, e.g.*, *Smith v. Bd. of Supervisors of S. Univ.*, 656 F. App'x 30 (5th Cir. 2016) (finding that Title VII retaliation claims and ADEA age discrimination claims are both analyzed under the *McDonnell Douglas* burden-shifting framework).

employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group."[384] Here, McDaniel alleges that he is a white male who was 60 years old at the time he was not selected for the position of Crew Base Manager in 2015.[385] He presents evidence that he was qualified for the position, and that Anella Popo, the decision maker for this position, instead selected Lori Ball-Austin, a 50-year-old African American female.[386] It also does not appear that Amtrak disputes that McDaniel has made out a prima facie case of discrimination.[387] Thus, the Court finds that McDaniel has established a prima facie showing that he was discriminated against on the basis of race, gender, and/or age in violation of Title VII and Louisiana law.

### 2.   Legitimate, Nondiscriminatory Reasons for Employment Action

Once the Court finds that McDaniel has made his prima facie showing for discrimination, the burden shifts to Amtrak to articular a legitimate, nondiscriminatory reason for its employment action.[388] Here, Amtrak identifies several nondiscriminatory reasons for why McDaniel was not selected for the Crew Base Manager position. Amtrak states that it posted the position of Crew Base Manager on January 20, 2015, and applicants were interviewed by a panel consisting of Anella Popo (Route Manager, New Orleans), Paul Carver (Assistant Superintendent, Mechanical Department), and Janet Burnett (of Amtrak's Human Capital department), "who reviewed the candidates' resumes and asked each candidate an identical set of questions."[389] Amtrak avers that

---

[384] *McCoy*, 492 F.3d at 556.

[385] Rec. Doc. 52 at 3, 14, 21.

[386] *Id.*

[387] *See* Rec. Docs. 41, 64.

[388] *McCoy*, 492 F.3d at 557.

[389] Rec. Doc. 41-2 at 14.

Anella Popo, a 43-year-old African American female and the decision maker here, selected Lori

Ball-Austin, a 50-year-old African American female, because she was very organized, particularly

with reports, had the skills to develop materials at the last minute, and could manage multiple tasks

at once.[390] According to Amtrak, Popo was familiar with McDaniel's work and found it lacking

"in numerous respects," as she previously had to make "numerous changes to correct issues with

his work," and that Popo did not believe had had the organizational skills needed for the position.[391]

As the Fifth Circuit has made clear, "[b]asing a promotion decision on an assessment of

qualifications will almost always qualify as a legitimate, nondiscriminatory reason" sufficient to

rebut McDaniel's prima facie case.[392] Thus, the Court finds that Amtrak has satisfied its burden of

producing evidence of legitimate, nondiscriminatory reasons for its decision not to select

McDaniel for this position.[393]

### 3.    *Pretext for Race, Gender, and/or Age Discrimination*

Once the Court finds that Amtrak has met its burden of production, McDaniel then bears

the final burden of producing "substantial evidence" to prove that Amtrak's "proffered reason is

not true but instead is a pretext for the real discriminatory or retaliatory purpose."[394] To defeat

---

[390] Rec. Doc. 41 at 22.

[391] *Id.*

[392] *Johnson v. Louisiana ex rel. Louisiana Bd. of Sup'rs for Louisiana State Univ. Agr. & Mech. Coll.*, 79 F. App'x 684, 689 (5th Cir. 2003); *Scales v. Slater*, 181 F.3d 703, 712 (5th Cir. 1999).

[393] *See Gregory v. Town of Verona, Miss.*, 574 F. App'x 525, 528 (5th Cir. 2014) (finding that not displaying the same leadership ability as the selected employee is a legitimate, non-discriminatory reason to prefer one candidate over another); *McCoy*, 492 F.3d at 557 (analyzing discrimination claims and retaliation claims under Title VII under the same framework); *Price v. Fed. Exp. Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) (stating that a defendant must produce evidence which, "*taken as true,* would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." (emphasis in original)) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)).

[394] *McCoy*, 492 F.3d at 557 (citing *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000)); *Laxton*, 333 F.3d at 578; *see also Moss*, 610 F.3d at 922 ("The question is whether [the plaintiff] has shown that there is a genuine issue of material fact as to whether [these] reason[s] [were] pretextual.")

summary judgment, McDaniel must rebut each of the nondiscriminatory reasons articulated by Amtrak.[395] Overall, McDaniel may establish pretext by showing that: (1) he was "clearly better qualified" than the person selected for the position; (2) Amtrak's "proffered reason was not the real reason for its employment decision," *i.e.* the explanations are false or "unworthy of credence;" or (3) that Amtrak was otherwise motivated by considerations of race, gender, and/or age.[396]

### i.  Whether McDaniel was "clearly better qualified" than Ball-Austin

First, McDaniel asserts that he has produced sufficient evidence demonstrating that he was "clearly better qualified" for the position of Crew Base Manager to defeat summary judgment.[397] As stated *supra*, "A fact finder can infer pretext if it finds that the employee was 'clearly better qualified' (as opposed to merely better or as qualified) than the employees who are selected."[398] However, courts will not find pretext when the employer's "judgments on qualifications are somewhere within the realm of reason."[399] Moreover, "[t]he fact that one candidate has 'better education, work experience, and longer tenure with the company do[es] not establish that he is clearly better qualified.'"[400] "[T]he bar is set high for this kind of evidence because differences in

---

[395] *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 412 (5th Cir. 2007); *McCoy*, 492 F.3d at 557.

[396] *Gonzalez v. City of San Antonio*, No. 12-50472, 2013 WL 1149996, at *3 (5th Cir. Mar. 12, 2013)*; Burrell*, 482 F.3d at 412 (" Burrell has two methods available to him to try to prove that Dr. Pepper's proffered reason for failing to promote him was a pretext for racial discrimination: (1) Burrell could show that Dr. Pepper's proffered explanation is false or 'unworthy of credence'; or (2) Burrell could try to prove that he is 'clearly better qualified' than the person selected for the position."); *McCoy*, 492 F.3d at 557. *See* Rec. Doc. 52 at 19 (McDaniel stating that he can establish pretext through both methods of proof).

[397] Rec. Doc. 52 at 19 ("If Plaintiff demonstrates he is clearly better qualified, as we believe he will, then that in and of itself is enough to prove pretext."); *id.* at 21.

[398] *Moss*, 610 F.3d at 922–23 (quoting *EEOC v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1444 (5th Cir. 1995)).

[399] *Churchill*, 539 F. App'x at 321.

[400] *Id.* (citing *Price*, 283 F.3d at 723).

66

qualifications are generally not probative evidence of discrimination unless those disparities are 'of such weight and significance that no reasonable person . . . could have chosen the candidate selected over the plaintiff for the job in question.'"[401]

According to its original job posting, the Crew Base Manager position is responsible for the field management of on-board service personal and provides administrative support for road operations.[402] The position is also responsible for responding to employees' needs and issues, but had no supervisory responsibilities.[403] The position requires three to five years of work experience, particularly in customer service performing audits, as well as proven success in developing and leading teams and proficiency in Microsoft Office.[404] Applicants also were required to have excellent oral and written communication skills and a Bachelor's Degree.[405]

McDaniel argues he was clearly more qualified for this position than Ball-Austin, as she had no prior experience managing a crew base and McDaniel had held this position for four years in North Carolina "with great success."[406] McDaniel also avers that he supervised the position of Crew Base Manager for seven years as Assistant Supervisor.[407] Moreover, McDaniel states that he supervised Ball-Austin when she was Onboard Services Manager and he was Assistant Superintendent, during which he argues that "she barely met [her] goals."[408] McDaniel also points

---

[401] *Gregory*, 574 F. App'x at 529 (quoting *Celestine v. Petroleos de Venezuela SA*, 266 F.3d 343, 357 (5th Cir.2001)).

[402] Rec. Doc. 41-23 at 2.

[403] *Id.*

[404] *Id.*

[405] *Id.*

[406] Rec. Doc. 52 at 21.

[407] *Id.* at 15.

[408] *Id.* at 21.

out that Popo stated in her deposition she did not have any complaints about McDaniel's performance of his duties.[409]

Here, the evidence produced by McDaniel does not support his argument that he was *clearly* better qualified than Ball-Austin such that no reasonable person would have selected Ball-Austin over McDaniel.[410] Ball-Austin was the On Board Services Manager, New Orleans for eight years, and had worked in various positions at Amtrak for 28 years at the time of her selection.[411] Ball-Austin's resume, which was reviewed by the selection panel,[412] states that her Amtrak experience had allowed her to interact with customers daily, understand what Amtrak employees face every day, develop training programs, lead and motivate employees, and obtain clerical knowledge.[413] Considering the requirements for the Crew Base Manager position, it is clear that Ball-Austin was qualified for the position. Moreover, Popo stated she chose Ball-Austin because of her organization skills, ability to develop materials at the last minute, and ability to multi-task.[414] By contrast, Popo testified in her deposition that she did not believe McDaniel was organized.[415] Popo stated that she had to "redo everything," such as the audit system, crew base, and manager schedule, after McDaniel left the position of Assistant Superintendent.[416] While McDaniel alleges that Ball-Austin "barley met goals" while he worked under him, McDaniel was not the decision

---

[409] Rec. Doc. 52-3 at 13.

[410] *Bright v. GB Bioscience Inc.*, 305 F. App'x 197, 205 (5th Cir. 2008).

[411] Rec. Doc. 41-23 at 4.

[412] Rec. Doc. 41-2 at 14.

[413] Rec. Doc. 41-23 at 4.

[414] Rec. Doc. 41-2 at 15.

[415] Rec. Doc. 41-10 at 24.

[416] *Id.*

maker for this position and has presented no evidence that Popo took his opinion of the other applicants into consideration.[417]

McDaniel has not presented sufficient evidence to raise a genuine issue of fact regarding whether he was clearly better qualified for this position in light of Popo's desired qualities in a candidate, Ball-Austin's extensive relevant experience at Amtrak, and Popo's stated complaints with McDaniel's work as Assistant Superintendent. As stated *supra*, "[t]he fact that one candidate has 'better education, work experience, and longer tenure with the company do[es] not establish that he is clearly better qualified.'"[418] Moreover, the evidence is clear that an applicant's years of experience was not the only factor in Popo's decision, and that she sought other key qualities that she identified in Ball-Austin.[419] The Court notes that Ball-Austin clearly "met the minimum job qualifications and had her own array of qualifications and certifications not considered or accounted for by [McDaniel]."[420] In other words, McDaniel's qualifications are "not so superior to those of the selectee[] to allow an inference of pretext,"[421] and it is clear that Popo's "judgments on qualifications are somewhere within the realm of reason" sufficient to prevent a finding of

---

[417] Rec. Doc. 41-2 at 14 (stating that the interview plane considered "candidates' resumes and asked each candidate an identical set of questions.").

[418] *Churchill*, 539 F. App'x at 321 (citing *Price*, 283 F.3d at 723). *See also Gregory*, 574 F. App'x at 529 (finding that it is not sufficient to show that two applicants had "comparable levels" of certification and experience or that the two applicants were "similarly qualified").

[419] *See Rowe*, 88 F. Supp. 3d at 670 (affirming summary judgment for defendant when plaintiff had more years of experience and more formal education than successful job applicant, but successful candidate outperformed plaintiff on the job interview, which defendant cited as the most important criterion for the job, and the selecting official stated that years of experience and formal education were "not the best indicators of who will make the best training instructor" and that these qualifications "are 'of little consequence.'") ((citing *Churchill,* 539 Fed. App'x at 320).

[420] *Id.*

[421] *E.E.O.C*, 47 F.3d at 1445.

69

pretext.[422] As the Fifth Circuit has previously stated, employer's "are generally free to weigh the qualifications of prospective employees, so long as they are not motivated by [race, gender and/or age]." Considering all the evidence presented by McDaniel, the Court cannot find that the alleged disparities between Ball-Austin's and McDaniel's qualifications are "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question."[423]   Accordingly, the Court finds that McDaniel has failed to present sufficient evidence that he was "clearly better qualified" for the position of Crew Base Manager. [424]

### ii.    Whether Amtrak's proffered reasons are false or Amtrak was otherwise motivated by race, gender, and/or age

Second, McDaniel argues that he has established pretext by showing that Amtrak's proffered reasons were not the real reasons for the decision not to select McDaniel for the position of Crew Base Manager.[425] To prove that each of Amtrak's stated reasons are false, McDaniel must point to "substantial" evidence "to support a reasonable inference that the proffered reason is false; a mere shadow of a doubt is insufficient."[426] "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action."[427] Additionally, as stated *supra*, a plaintiff alleging a disparate treatment claim may also survive summary judgment by pointing to evidence showing that the employer's reasons, while true, are not the only reasons for its conduct,

---

[422] *Churchill*, 539 F. App'x at 321.

[423] *Bright v. GB Bioscience Inc.*, 305 F. App'x 197, 205 (5th Cir. 2008).

[424] *Gregory*, 574 F. App'x at 529.

[425] Rec. Doc. 52 at 2.

[426] *E.E.O.C*, 47 F.3d at 1443–44.

[427] *Laxton*, 333 F.3d at 578–79 (citing *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002)).

and another motivating factor was the plaintiff's protected characteristics.[428] Although McDaniel did not specifically assert both arguments, the Court will again consider both approaches together.

Here, McDaniel again does not offer sufficient evidence to establish that Amtrak's proffered reasons are false or unworthy of credence or that Amtrak was otherwise motivated by race, gender, and/or age. McDaniel contends that he is more qualified than Ball-Austin, and offers little to no additional evidence to support his assertion that Amtrak's selection decision was based on race, gender, and/or age.[429] McDaniel does point out that at one point in her deposition, Popo testified that she did not have any issues or complaints with McDaniel's performance, which appears to contradict her later testimony in the same deposition that one of the reasons she did not select McDaniel was because she found his work lacking "in numerous respects" and that she previously had to make "numerous changes to correct issues with his work."[430]

However, even assuming Popo's conflicting testimony was sufficient to rebut that stated reason, McDaniel must rebut *each* of Amtrak's legitimate, non-discriminatory reasons to establish pretext.[431] Here, McDaniel does not offer sufficient evidence rebutting Popo's other stated reasons that she selected Ball-Austin because she was very organized, particularly with reports, had the skills to develop materials at the last minute, and could manage multiple tasks at once.[432] Moreover, Popo averred that she did not believe McDaniel had the organizational skills needed for the position, and provided several examples during her deposition of areas she had to redo after

---

[428] *Reynolds v. Sovran Acquisitions, L.P.*, 650 F. App'x 178, 180–81 (5th Cir. 2016) (quoting *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007)).

[429] *See* Rec. Doc. 52 at 21.

[430] *Id.*

[431] *Burrell*, 482 F.3d at 412; *McCoy*, 492 F.3d at 557.

[432] Rec. Doc. 41 at 22.

McDaniel left the Assistant Superintendent position.[433] While McDaniel does allege that his discrimination claim is supported by the fact that there was a "pattern of selecting African Americans for positions [he] applied for,"[434] such evidence is insufficient to survive summary judgment. As the Fifth Circuit held in *Sessions v. Rusk State Hosp.*, pointing to statistical evidence of a pattern of selectees outside the protected race group may buttress a prima facie case, "but it does not demonstrate that the reason advanced for failure to promote him lacked either substance or credibility."[435] Like in *Sessions*, where the plaintiff argued that African Americans constituted 17.3% of employees but only 2.8% of management, McDaniel's argument that some of the nine positions he applied for were filled by African Americans is insufficient to establish pretext.[436] Even considering the additional evidence presented by McDaniel in support of his Route Director claim analyzed *supra*, such as the "Amtrak Ink" articles and changes in Amtrak's retirement plans, McDaniel still has not proven that Amtrak's stated reasons here are pretextual or that Amtrak was otherwise motivated by race, gender, and/or age. Accordingly, the Court finds that McDaniel has failed to point to sufficient evidence to establish that Amtrak's stated reasons for not selecting him were false or unworthy of credence or that Amtrak was otherwise motivated by McDaniel's protected characteristics.

### iii.   Conclusion

Considering all of McDaniel's evidence presented, the Court finds that McDaniel has failed to rebut each of Amtrak's legitimate, nondiscriminatory reasons for selecting Ball-Austin, an 50-

---

[433] *Id.*; Rec. Doc. 41-10 at 24.

[434] Rec. Doc. 41-4 at 38.

[435] 648 F.2d 1066, 1071 (5th Cir. 1981).

[436] *Id. See also Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 882 (5th Cir. 2003) (holding that evidence of a pattern of failure to promote African American males to managerial or supervisory positions is not sufficient to demonstrate pretext).

year-old African American woman, for the position of Crew Base Manager under either theory asserted by McDaniel. Amtrak has articulated several legitimate, nondiscriminatory reasons for selecting Ball-Austin over McDaniel, and McDaniel's evidence is not sufficient to raise a genuine dispute of material fact regarding Amtrak's stated reasons or support his allegation that Amtrak was motivated by race, gender, and/or age. As the Fifth Circuit has repeatedly stated, the "mere fact that an employer uses subjective criteria is not . . . sufficient evidence of pretext."[437] Therefore, the Court finds that McDaniel has failed to produce sufficient evidence to rebut Amtrak's legitimate, nondiscriminatory reasons to establish pretext, or point to other evidence sufficient to support an inference that Amtrak discriminated against McDaniel.[438] McDaniel's subjective belief that race, gender, and/or age was a motivating factor in his non-selection for the position of Route Director finds insufficient support in the record.[439] The Court is not willing to tie the hands of employers by imposing a seniority requirement on an employer's hiring choices, especially where, as here, an employer has identified multiple other relevant qualifications for choosing a candidate over the plaintiff.[440] Amtrak has produced substantial evidence that no discrimination occurred, and, at best, McDaniel "has raised only a weak issue of fact and therefore

---

[437] *Churchill v. Texas Dep't of Criminal Justice*, 539 F. App'x 315, 320 (5th Cir. 2013); *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 882 (5th Cir. 2003).

[438] *Laxton v. Gap Inc.*, 333 F.3d 572, 579–80 (5th Cir. 2003) ("Our concern is whether the evidence supports an inference that Gap intentionally discriminated against Laxton, an inference that can be drawn if its proffered reason was not the real reason for discharge.").

[439] *Churchill*, 539 F. App'x at 320–21.

[440] The Fifth Circuit has "repeatedly and emphatically stated that [anti-discrimination] laws 'are not vehicles for judicial second-guessing of business decisions.'" *Mato v. Baldauf*, 267 F.3d 444, 452 (5th Cir. 2001) (*abrogated on other grounds by Staub v. Proctor Hosp.*, 562 U.S. 411 (2011)) (quoting *Deines v. Tex. Dep't of Prot. & Regulatory Serv.*, 164 F.3d 277, 281 (5th Cir. 1999)). *See also Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) (employment discrimination laws not intended to permit judicial second-guessing of business decisions, nor to transform courts into personnel managers); *Heggemeier v. Caldwell Cty. Comm'rs Court*, No. 1:13-CV-746-LY, 2015 WL 1737861, at *8 (W.D. Tex. Apr. 15, 2015), *subsequently aff'd sub nom. Heggemeier v. Caldwell Cty., Texas*, 826 F.3d 861 (5th Cir. 2016).

cannot survive summary judgment."[441] Accordingly, the Court will grant summary judgment in favor of Amtrak on McDaniel's claims of race, gender, and/or age discrimination for the Crew Base Manager position.

### c.      Onboard Service Manager, New Orleans

McDaniel alleges that he was not selected for the position of Onboard Service Manager because of his race, gender, and/or age or in retaliation for filing an EEOC claim in violation of Title VII and Louisiana law.[442] Amtrak asserts that McDaniel stated in his deposition that he is not asserting a gender discrimination claim when the selected individual was also male.[443] McDaniel did not contest this point in his opposition memorandum, and instead only says that he believes race or retaliation may have been a factor in his nonselection for the Onboard Service Manager position.[444] However, Amtrak failed to attach the relevant pages of McDaniel's deposition that allegedly includes such a stipulation to its Motion for Summary Judgment.[445] Thus, because McDaniel's complaint alleges discrimination on the basis of race, gender, and/or age for all positions, the Court will proceed with its analysis for all three claims, and will address McDaniel's retaliation claim separately *infra*. Amtrak asserts that summary judgment on McDaniel's Onboard Service Manager position claim is warranted because Amtrak has articulated several non-discriminatory reasons for not selecting McDaniel for this position, and McDaniel has not

---

[441] *Id.* (quotation marks and citations omitted). *See  Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 148 (2000) ("[A]n employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.").

[442] Rec. Doc. 1 at 6.

[443] Rec. Doc. 41-1 at 12.

[444] Rec. Doc. 52 at 22.

[445] *See* Rec. Doc. 41-4.

identified any evidence that this decision was pretextual or was impermissibly based on race, gender, and/or age.[446]

### 1. *Prima Facie Case of Race, Gender, and/or Age Discrimination*

First, McDaniel must establish a prima facie case of discrimination under the traditional *McDonnell Douglas* framework by demonstrating that he: "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group."[447] Here, McDaniel, alleges that he is a white male who was 60 years old at the time he was not selected for the position of Onboard Service Manager in 2015.[448] He presents evidence that he was qualified for the position, and that Anella Popo, the decision maker for this position, instead selected Horatio Ames, a 56-year-old African American male.[449]

Amtrak argues that McDaniel cannot state a prima facie case of age discrimination because Horatio Ames was not significantly younger than McDaniel, and assumes that McDaniel does not assert a gender discrimination claim here.[450] However, Title VII allows a plaintiff to state a prima facie case by showing he was replaced by someone outside his protected group *or* was treated less favorably than other similarly situated employees outside the protected group.[451] Here, while McDaniel does not directly address this argument, he does arguably aver that Amtrak treated older,

---

[446] Rec. Doc. 41-1 at 21.

[447] *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).

[448] Rec. Doc. 52 at 15, 22.

[449] *Id.*

[450] Rec. Doc. 41-1 at 24.

[451] *McCoy*, 492 F.3d at 556.

white, male employees less favorably despite his alleged greater level of experience.[452] Thus, the Court finds that McDaniel has established a prima facie showing that he was discriminated against on the basis of race, gender, and/or age in violation of Title VII and Louisiana law.

### 2.    Legitimate, Nondiscriminatory Reasons for Employment Action

Once the Court finds that McDaniel has made his prima facie showing for discrimination and retaliation, the burden shifts to Amtrak to articulate a legitimate, nondiscriminatory reason for its employment action.[453] Amtrak only bears the burden of production, not persuasion.[454] Here, Amtrak identifies several nondiscriminatory reasons for why McDaniel was not selected for the Onboard Service Manager position. Amtrak avers that Anella Popo, a 43-year-old African American female and the decision maker here, selected Horatio Ames, a 56-year-old African American male, because he had experience in customer services, management, and train and engine equipment.[455] Amtrak also asserts that Popo selected Ames because of his leadership qualities, mentorship abilities, enthusiasm, and motivation.[456] Additionally, Popo averred that she believed Ames gave good answers with specific examples during his interview, that she respected Ames' military service, saw how he motivated employees and performed his duties, and appreciated how he had a good rapport with employees working under him.[457] Popo states that she

---

[452] Rec. Doc. 1 at 6–7; Rec. Doc. 52 at 11.

[453] McCoy, 492 F.3d at 557.

[454] Id.

[455] Rec. Doc. 41-1 at 24.

[456] Id.

[457] Id.

believed Ames could learn the onboard experience in this position that he lacked, and that he had demonstrated the leadership qualities and strength for which she was looking for this position.[458]

As the Fifth Circuit has made clear, "[b]asing a promotion decision on an assessment of qualifications will almost always qualify as a legitimate, nondiscriminatory reason" sufficient to satisfy Amtrak's burden here.[459] Moreover, the Fifth Circuit has held that considerations of an applicant's military and leadership experience can also constitute sufficient nondiscriminatory reasons for selecting one candidate over another.[460] Thus, the Court finds that Amtrak has satisfied its burden of producing evidence of legitimate, nondiscriminatory reasons for its decision not to select McDaniel for this position.[461]

### 3. Pretext for Discrimination

Once the Court finds that Amtrak has met its burden of production, McDaniel then bears the final burden of producing "substantial evidence" to prove that the Amtrak's "proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose."[462] To defeat summary judgment, McDaniel must rebut each of the nondiscriminatory reasons articulated by

---

[458] *Id.*

[459] *Johnson v. Louisiana ex rel. Louisiana Bd. of Sup'rs for Louisiana State Univ. Agr. & Mech. Coll.*, 79 F. App'x 684, 689 (5th Cir. 2003); *Scales v. Slater*, 181 F.3d 703, 712 (5th Cir. 1999).

[460] *Price v. Fed. Exp. Corp.*, 283 F.3d 715, 723 (5th Cir. 2002) ("While Price clearly met the qualifications for the Zone Manager position as posted, due to the specific needs of FedEx in combating the problems in Atlanta, Paone's skill set, including his significant military, security, and leadership experience, could have reasonably outweighed Price's better education and longer tenure with the company.").

[461] *See Gregory v. Town of Verona, Miss.*, 574 F. App'x 525, 528 (5th Cir. 2014) (finding that not displaying the same leadership ability as the selected employee is a legitimate, non-discriminatory reason to prefer one candidate over another); *McCoy*, 492 F.3d at 557 (analyzing discrimination claims and retaliation claims under Title VII under the same framework); *Price*, 283 F.3d at 720 (stating that a plaintiff must produce evidence which, "*taken as true,* would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." (emphasis in original)) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)).

[462] *McCoy*, 492 F.3d at 557 (citing *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000)); *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003); *see also Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) ("The question is whether [the plaintiff] has shown that there is a genuine issue of material fact as to whether [these] reason[s] [were] pretextual.")

Amtrak.[463] Overall, McDaniel may establish pretext by showing that: (1) he was "clearly better qualified" than the person selected for the position; (2) Amtrak's "proffered reason was not the real reason for its employment decision," *i.e.* the explanations are false or "unworthy of credence;" or (3) that Amtrak was otherwise motivated by considerations of race, gender, and/or age.[464]

### i.     Whether McDaniel was "clearly better qualified" than Ames

First, McDaniel asserts that he has produced sufficient evidence demonstrating that he was "clearly better qualified" for the position of Onboard Service Manager to defeat summary judgment.[465]  As stated *supra*, "[a] fact finder can infer pretext if it finds that the employee was 'clearly better qualified' (as opposed to merely better or as qualified) than the employees who are selected."[466] However, "[t]he fact that one candidate has 'better education, work experience, and longer tenure with the company do[es] not establish that he is clearly better qualified.'"[467] "Unless the qualifications are so widely disparate that no reasonable employer would have made the same decision, any differences in qualifications are generally not probative evidence of discrimination."[468]

---

[463] *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 412 (5th Cir. 2007); *McCoy*, 492 F.3d at 557.

[464] *Gonzalez v. City of San Antonio*, No. 12-50472, 2013 WL 1149996, at *3 (5th Cir. Mar. 12, 2013)*; Burrell*, 482 F.3d at 412 (" Burrell has two methods available to him to try to prove that Dr. Pepper's proffered reason for failing to promote him was a pretext for racial discrimination: (1) Burrell could show that Dr. Pepper's proffered explanation is false or 'unworthy of credence'; or (2) Burrell could try to prove that he is 'clearly better qualified' than the person selected for the position."); *McCoy*, 492 F.3d at 557. *See* Rec. Doc. 52 at 19 (McDaniel stating that he can establish pretext through both methods of proof).

[465] Rec. Doc. 52 at 19 ("If Plaintiff demonstrates he is clearly better qualified, as we believe he will, then that in and of itself is enough to prove pretext."); *id.* at 21.

[466] *Moss*, 610 F.3d at 922–23 (quoting *EEOC v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1444 (5th Cir. 1995)).

[467] *Churchill v. Tex. Dep't of Criminal Justice*, 539 F. App'x 315, 321 (5th Cir. 2013) (citing *Price*, 283 F.3d at 723).

[468] *Moss*, 610 F.3d at 923 (quotation marks and citations omitted).

According to its original job posting, the Onboard Service Manager position is responsible for overseeing and directing on-board service operations and achieving optimum customer and passenger satisfaction.[469] The Onboard Service Manager is tasked with, among other responsibilities, ensuring passengers are safe and satisfied, leading and developing talent in employees, and serving as a liaison with other departments.[470] The posting states that candidates are required to have three to five years of work experience, and states that work experience in this position includes contributing to a safe and secure work environment, demonstrating leadership in particular programs and initiatives, working with crew base, and dealing with customer complaints.[471] The position did not have supervisory responsibilities, does not state that previous onboard experience is required, and notes that applicants needed excellent oral and written communication skills.[472]

McDaniel argues he was clearly more qualified for this position than Ames, as Ames had no prior onboard experience and had only worked for Amtrak for three years.[473] McDaniel also points out that he was not included on the initial interview list until he called Human Capital and complained.[474] McDaniel notes that Popo stated in her deposition that this was an error at Human Capital and that McDaniel did receive an interview after he raised the issue, but McDaniel argues that this constitutes a disputed material fact.[475]

---

[469] Rec. Doc. 41-24 at 2.

[470] *Id.*

[471] *Id.*

[472] *Id.*

[473] Rec. Doc. 52 at 22.

[474] *Id.*

[475] *Id.*

Here, the evidence produced by McDaniel is insufficient to support his argument that he was *clearly* better qualified than Ames for this position such that "no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question."[476] While it is undisputed that McDaniel had worked for Amtrak longer and previously had greater responsibilities and experiences at Amtrak, Amtrak has identified multiple other qualifications of Ames that Popo noted when she selected him for the Onboard Service Manager position. Ames had experience in customer services, management, and train and engine equipment.[477] Popo also stated that Ames was qualified because of his leadership qualities, mentorship abilities, enthusiasm, and motivation.[478] Additionally, Popo averred that she believed Ames gave good answers with specific examples during his interview, and that she respected Ames' military service, how he motivated employees and performed his duties, and had a good rapport with employees working under him.[479] Popo states that she believed Ames could easily acquire onboard experience in this position, and that he had demonstrated the leadership qualities and strength for which she was looking for this position.[480] Considering the requirements for the Onboard Service Manager position, it is clear that Ames was qualified for the position.

Accordingly, McDaniel has not presented sufficient evidence that he was clearly better qualified for this position to create a genuine dispute of material fact regarding pretext or an inference of discriminatory intent. As stated *supra*, "[t]he fact that one candidate has 'better

---

[476] *Julian v. City of Houston*, No. 4:12-CV-2973, 2014 WL 3795580, at *11 (S.D. Tex. July 31, 2014), *aff'd*, 618 F. App'x 211 (5th Cir. 2015) (quoting *Deines v. Tex. Dep't of Protective & Regulatory Servs.*, 164 F.3d 277, 280–81 (5th Cir. 1999)).

[477] Rec. Doc. 41-1 at 24.

[478] *Id.*

[479] *Id.*

[480] *Id.*

education, work experience, and longer tenure with the company do[es] not establish that he is clearly better qualified.'"[481] Moreover, the evidence is clear that an applicant's years of experience was not the only factor in Popo's decision, and that she identified other key qualities in Ames that that McDaniel did not have.[482]   The Court notes that Ames clearly "met the minimum job qualifications and had [his] own array of qualifications and certifications not considered or accounted for by [McDaniel]."[483] In other words, McDaniel's qualifications are "not so superior to those of the selectee[] to allow an inference of pretext,"[484] and it is clear that Popo's "judgments on qualifications are somewhere within the realm of reason" sufficient to prevent a finding of pretext.[485] As the Fifth Circuit has previously stated, employers "are generally free to weigh the qualifications of prospective employees, so long as they are not motivated by [race, gender and/or age]."[486] Considering all the evidence presented by McDaniel, the Court cannot find that the alleged disparities between Ames' and McDaniel's qualifications are "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question."[487] As stated *supra*, the Court is

---

[481] *Churchill*, 539 F. App'x at 321 (citing *Price*, 283 F.3d at 723). *See also Gregory*, 574 F. App'x at 529 (finding that it is not sufficient to show that two applicants had "comparable levels" of certification and experience or that the two applicants were "similarly qualified").

[482] *See Rowe v. Jewell*, 88 F. Supp. 3d 647, 670 (E.D. La. 2015) (Wilkinson, Mag.) (affirming summary judgment for defendant when plaintiff had more years of experience and more formal education than successful job applicant, but successful candidate outperformed plaintiff on the job interview, which defendant cited as the most important criterion for the job, and the selecting official stated that years of experience and formal education were "not the best indicators of who will make the best training instructor" and that these qualifications "are 'of little consequence.'") (citing *Churchill,* 539 Fed. App'x at 320).

[483] *Id.*

[484] *E.E.O.C. v. Louisiana Office of Cmty. Servs.*, 47 F.3d 1438, 1445 (5th Cir. 1995).

[485] *Churchill*, 539 F. App'x at 321.

[486] *Martinez v. Texas Workforce Comm'n-Civil Rights Div.*, 775 F.3d 685, 688 (5th Cir. 2014).

[487] *Bright v. GB Bioscience Inc.*, 305 F. App'x 197, 205 (5th Cir. 2008).

81

not willing to tie the hands of employers by imposing a seniority requirement on an employer's hiring choices, especially where, as here, an employer has identified multiple other relevant qualifications for choosing a candidate over the plaintiff.[488] Accordingly, the Court finds that McDaniel has failed to present sufficient evidence that he was "clearly better qualified" for the position of Onboard Service Manager to raise a genuine issue of fact regarding pretext.[489]

### ii.   Whether Amtrak's proffered reasons are false or Amtrak was otherwise motivated by race, gender, and/or age

Second, McDaniel argues that he has established pretext by showing that Amtrak's proffered reasons were not the real reasons for the decision not to select McDaniel for the position of Onboard Service Manager.[490] To prove that each of Amtrak's stated reasons are false, McDaniel must point to "substantial" evidence "to support a reasonable inference that the proffered reason is false; a mere shadow of a doubt is insufficient."[491] "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action."[492] Additionally, as stated *supra*, a plaintiff alleging a disparate treatment claim may also survive summary judgment by pointing to evidence showing that the employer's reasons, while true, are not the only reasons for

---

[488] The Fifth Circuit has "repeatedly and emphatically stated that [anti-discrimination] laws 'are not vehicles for judicial second-guessing of business decisions.'" *Mato v. Baldauf,* 267 F.3d 444, 452 (5th Cir. 2001) (*abrogated on other grounds by Staub v. Proctor Hosp.,* 562 U.S. 411 (2011)) (quoting *Deines v. Tex. Dep't of Prot. & Regulatory Serv.,* 164 F.3d 277, 281 (5th Cir. 1999)). *See also Bryant v. Compass Grp. USA Inc.,* 413 F.3d 471, 478 (5th Cir. 2005) (employment discrimination laws not intended to permit judicial second-guessing of business decisions, nor to transform courts into personnel managers); *Heggemeier v. Caldwell Cty. Comm'rs Court,* No. 1:13-CV-746-LY, 2015 WL 1737861, at *8 (W.D. Tex. Apr. 15, 2015), *subsequently aff'd sub nom. Heggemeier v. Caldwell Cty., Texas,* 826 F.3d 861 (5th Cir. 2016).

[489] *Gregory v. Town of Verona, Miss.,* 574 F. App'x 525, 529 (5th Cir. 2014).

[490] Rec. Doc. 52 at 2.

[491] *E.E.O.C.,* 47 F.3d at 1443–44.

[492] *Laxton v. Gap Inc.,* 333 F.3d 572, 578–79 (5th Cir. 2003) (citing *Sandstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 899 (5th Cir. 2002)).

its conduct, and another motivating factor was the plaintiff's protected characteristics.[493] Again, the Court notes that although McDaniel did not specifically assert both arguments, the Court will consider both approaches.

Here, McDaniel again does not offer sufficient evidence to establish that Amtrak's proffered reasons are false or unworthy of credence or that Amtrak was otherwise motivated by race, gender, and/or age. McDaniel contends that he is more qualified than Ames, and offers little additional evidence to support his assertion that Amtrak's selection decision was based on race, gender, and/or age.[494] McDaniel does assert that he was initially not included on the interview list and did not receive an interview until he called Human Capital and complained.[495] However, Popo testified in her deposition that she did select McDaniel for an interview and that he was "always on the list," but that the Human Capital representative in Miami failed to send McDaniel an interview.[496] McDaniel does not present any evidence in contradiction to this explanation, or offer any evidence that supports his insinuation that he was left off the interview list because of his race, gender, and/or age. Additionally, McDaniel does not explain how being left off the interview list rebuts any of Amtrak's legitimate, non-discriminatory reasons for selecting Ames instead of McDaniel.[497] Moreover, the Court notes that after McDaniel raised the issue, he subsequently received an interview.

---

[493] *Reynolds v. Sovran Acquisitions, L.P.*, 650 F. App'x 178, 180–81 (5th Cir. 2016) (quoting *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007)).

[494] *See* Rec. Doc. 52 at 22.

[495] *Id.*

[496] Rec. Doc. 41-10 at 17.

[497] *See Bright v. GB Bioscience Inc.*, 305 F. App'x 197, 203–04 (5th Cir. 2008) (noting that the plaintiff's testimony that he submitted three resumes did not controvert the defendant's evidence that they did not receive his resume, and that the plaintiff's "other evidence [has] not shown that Mullis, who screened the resumes during this period, ever received it, let alone rejected it.").

Even considering the additional evidence presented by McDaniel in support of his other claims, such as the alleged pattern of selecting African Americans or Amtrak's alleged preference for younger employees, it is clear that McDaniel has failed to rebut each of Amtrak's legitimate, non-discriminatory reasons to establish pretext or otherwise show that Amtrak was motivated by McDaniel's protected characteristics.[498]  As discussed *supra*, merely being more experienced than the selected candidate does not establish pretext, and Amtrak has offered multiple other qualifications Ames possessed that Popo noted when she selected him for the Onboard Service Manager position.[499]  Accordingly, the Court finds that McDaniel has failed to point to sufficient evidence to establish that Amtrak's stated reasons for not selecting him were false or unworthy of credence or that Amtrak was motivated by considerations of race, gender, and/or age.

### iii.   Conclusion

Considering all of McDaniel's evidence presented, the Court finds that McDaniel has failed to rebut each of Amtrak's legitimate, nondiscriminatory reasons for selecting Ames, an African American in a similar age group and the same gender as McDaniel, for the position of Onboard Service Manager under either theory asserted by McDaniel. Amtrak has articulated several legitimate, nondiscriminatory reasons for selecting Ames over McDaniel, and McDaniel's evidence is not sufficient to raise a genuine dispute of material fact regarding Amtrak's stated reasons. Moreover, McDaniel has not produced sufficient evidence to support his allegation that Amtrak was otherwise motivated by considerations of race, gender, and/or age. As the Fifth Circuit has repeatedly stated, the "mere fact that an employer uses subjective criteria is not . . . sufficient

---

[498] *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 412 (5th Cir. 2007); *McCoy*, 492 F.3d at 557.

[499] *Price v. Fed. Exp. Corp.*, 283 F.3d 715, 723 (5th Cir. 2002) ("Showing that two candidates are similarly qualified does not establish pretext under this standard . . . [and] Price's better education, work experience, and longer tenure with the company do not establish that he is clearly better qualified.");

evidence of pretext."[500] Therefore, the Court finds that McDaniel has failed to produce sufficient evidence to rebut Amtrak's legitimate, nondiscriminatory reasons to establish pretext, or point to other evidence sufficient to support an inference that Amtrak discriminated against McDaniel.[501] McDaniel's subjective belief that race, gender, and/or age was a motivating factor in his non-selection for the position of Onboard Service Manager finds insufficient support in the record.[502] Amtrak has produced substantial evidence that no discrimination occurred, and, at best, McDaniel "has raised only a weak issue of fact and therefore cannot survive summary judgment."[503] Accordingly, the Court will grant summary judgment in favor of Amtrak on McDaniel's claims of race, gender, and/or age discrimination for the Onboard Service Manager position.

### c. Retaliation Claims under Title VII and Louisiana State Law

McDaniel also alleges that he was not selected for both the Crew Base Manager position and the Onboard Service Manager position in retaliation for filing an internal complaint with Amtrak and/or a complaint with the EEOC.[504] Retaliation claims under Title VII and Louisiana state law are also analyzed through the *McDonnell Douglas* burden-shifting framework.[505]

---

[500] *Churchill v. Tex. Dep't of Criminal Justice*, 539 F. App'x 315, 320 (5th Cir. 2013); *Manning v. Chevron Chem. Co.,* 332 F.3d 874, 882 (5th Cir. 2003).

[501] *Laxton*, 333 F.3d at 579–80 ("Our concern is whether the evidence supports an inference that Gap intentionally discriminated against Laxton, an inference that can be drawn if its proffered reason was not the real reason for discharge.").

[502] *Churchill*, 539 F. App'x at 320–21.

[503] *Id.* (quotation marks and citations omitted). *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 148 (2000) ("[A]n employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.").

[504] *See* Rec. Doc. 52 at 13–15.

[505] *Thomas*, 256 F. App'x at 661 (citing 411 U.S. 792 (1973)); *see Smith v. Bd. of Supervisors of S. Univ.*, 656 F. App'x 30 (5th Cir. 2016) ("Title VII retaliation claims based on circumstantial evidence are analyzed under the *McDonnell Douglas* burden-shifting framework . . . .").

Because McDaniel's evidence supporting his retaliation claim for both positions are largely identical, the Court will consider both claims simultaneously.

### 1.    Prima Facie Case of Retaliation

To establish a prima facie case of retaliation under Title VII and Louisiana law, McDaniel must show "(1) that [he] engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action."[506] Ultimately, "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action."[507]

Here, McDaniel presents evidence that he filed an internal complaint of discrimination on December 23, 2013, and he filed a complaint with the EEOC on June 18, 2014, concerning his nonselection for the Route Director position and six other positions.[508] McDaniel also presents evidence that subsequently, "in the first quarter of 2015," he applied for and was not selected for the positions of Crew Base Manager and Onboard Service Manager.[509] McDaniel avers that he was not selected by Popo in retaliation for his EEOC complaint involving her selection for Route Director, and alleges that Popo knew about the EEOC claim.[510] It appears that Amtrak does not dispute that McDaniel has made out a prima facie case of retaliation.[511] Thus, the Court finds that McDaniel has established a prima facie showing that he was not selected for the Crew Base

---

[506] *Smith v. Bd. of Supervisors of S. Univ.*, 656 F. App'x 30 (5th Cir. 2016).

[507] *Minnis v. Bd. of Sup'rs of Louisiana State Univ. & Agric. & Mech. Coll.*, 55 F. Supp. 3d 864, 882 (M.D. La. 2014) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2521 (2013)), *aff'd sub nom. Minnis v. Bd. of Sup'rs of Louisiana State Univ. & Agr. & Mech. Coll.*, 620 F. App'x 215 (5th Cir. 2015).

[508] Rec. Doc. 52 at 13.

[509] *Id.* at 13–15.

[510] *Id.*

[511] *See* Rec. Docs. 41, 64.

Manager position or the Onboard Service Manager position in retaliation for engaging in a protected activity in violation of Title VII and Louisiana law.

### 2.      Legitimate, Nondiscriminatory Reasons for Employment Action

Once the Court finds that McDaniel has made his prima facie showing for retaliation, the burden shifts to Amtrak to articular a legitimate, nondiscriminatory or nonretaliatory reason for its employment action.[512] As explained *supra*, the Court finds that Amtrak's stated reasons for selecting Ball-Austin for the Crew Base Manager position and Ames for the Onboard Service Manager position constitute legitimate, nonretaliatory reasons sufficient to satisfy Amtrak's burden here.[513]

### 3.      Pretext for Retaliation

In addition to the evidence considered for McDaniel's discrimination claims *supra*, which the Court found was insufficient to establish pretext, McDaniel presents additional evidence that he was not selected for the Crew Base Manager position and the Onboard Service Manager position in retaliation for filing an internal complaint and/or an EEOC complaint and that Amtrak's stated reasons are mere pretext.[514] McDaniel alleges that both Popo, the decision maker here, and Kirk, Popo's immediate superior, knew that McDaniel had filed an internal complaint of discrimination and an EEOC complaint.[515]

---

[512] *McCoy*, 492 F.3d at 557.

[513] *See Gregory v. Town of Verona, Miss.*, 574 F. App'x 525, 528 (5th Cir. 2014) (finding that not displaying the same leadership ability as the selected employee are legitimate, non-discriminatory reasons to prefer one candidate over another); *McCoy*, 492 F.3d at 557 (analyzing discrimination claims and retaliation claims under Title VII under the same framework); *Price*, 283 F.3d at 720 (stating that a plaintiff must produce evidence which, "*taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." (emphasis in original)) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)).

[514] *See* Rec. Doc. 52 at 13–15, 21–22.

[515] *Id.*

However, McDaniel's additional evidence fails to establish pretext or show that his non-selection for either position was in retaliation for any protected activity. First, McDaniel's affidavit states that he only informed *Kirk* of his internal complaint of discrimination on December 23, 2013,[516] but he has not provided any evidence that Popo, the decision maker for both positions, was aware of the internal complaint or that Kirk told Popo about the internal complaint. Rather, McDaniel admitted during his deposition that he does not know if Kirk told Popo about the internal complaint.[517] Additionally, Popo testified in her deposition that she was not aware of any internal complaint at the time she made her selections, and that she only found out about it in October of 2016.[518] The Fifth Circuit has determined that, "in order to establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity."[519]

Similarly, McDaniel's affidavit states that he told Popo about the EEOC complaint in 2014;[520] however, in his deposition, McDaniel stated that he did not know for sure whether Popo was aware that he had made any type of internal or external complaint of discrimination, and instead asserted that it was "reasonable" to think she did know.[521] "It is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches,

---

[516] Rec. Doc. 52-1 at 7.

[517] Rec. Doc. 41-2 at 15; Rec. Doc. 41-4 at 29.

[518] Rec. Doc. 41-2 at 14–15; Rec. Doc. 41-10 at 6–7, 14.

[519] *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 883 (5th Cir. 2003); *see also Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999) ("If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct.").

[520] Rec. Doc. 52-1 at 7.

[521] *See* Rec. Doc. 41-4 at 37. *See also id.* at 28–29 (McDaniel stating in his deposition that he "believe[d] so" that Popo knew about the complaints, but because he had sent his internal complaint to Kirk).

without explanation, sworn testimony."[522] Likewise, "[a] party opposing a motion for summary judgment cannot simply rely on self-serving affidavits."[523] By contrast, Popo testified that McDaniel only told her that he filed a lawsuit against Amtrak, which occurred after both selection decisions took place, and did not state that she knew he filed a complaint with the EEOC.[524]

Even if McDaniel had established that Popo knew about both complaints filed by McDaniel, mere knowledge of the protected activity or the fact that an adverse employment action occurred after a complaint was filed is insufficient to establish pretext. Here, McDaniel submitted his internal complaint to Kirk on December 23, 2013, and filed his EEOC complaint on June 18, 2014.[525] However, the position of Crew Base Manager was posted months later on January 20, 2015, and the position of Onboard Service Manager was posted over two months after that, and thus Popo's selection decisions occurred well after the protected activity took place.[526] However, the Fifth Circuit has explicitly stated that it has "never held that a 10-month time lapse, on its own, is sufficient to satisfy the causal connection" of a retaliation claim for summary judgment purposes.[527] Rather, the Fifth Circuit has previously noted that time lapses of "up to four months" have been found to be sufficient for a retaliation claim to survive summary judgment.[528]

---

[522] *Ripple v. Marble Falls Indep. Sch. Dist.*, 99 F. Supp. 3d 662, 681 (W.D. Tex. 2015) (citing *S.W.S. Erectors, Inc. v. Infax, Inc.,* 72 F.3d 489, 495 (5th Cir. 1996) (citing *Thurman v. Sears, Roebuck & Co.,* 952 F.2d 128, 137 n. 23 (5th Cir. 1992))).

[523] *Kelly v. United States*, 805 F. Supp. 14, 16 (E.D. La. 1992).

[524] Rec. Doc. 41-2 at 14 & n.7; Rec. Doc. 41-10 at 4, 14.

[525] Rec. Doc. 1 at 5.

[526] Rec. Doc. 41-2 at 14.

[527] *Harvey v. Stringer*, 113 F. App'x 629, 631 (5th Cir. 2004).

[528] *Id.* (citing *Evans v. City of Houston,* 246 F.3d 344, 354 (5th Cir. 2001)).

As the Fifth Circuit has made clear, "the mere fact that some adverse action is taken *after* an employee engages in some protected activity will not *always* be enough for a prima facie case."[529] Here, having found that Amtrak offers legitimate, nonretaliatory reasons for not selecting McDaniel for this position, the burden on McDaniel becomes "more stringent,"[530] such that he must do more than point to a tenuous temporal proximity between the complaint and the adverse employment action and "offer some evidence from which the jury may infer that retaliation was the real motive."[531] Considering all the evidence provided by McDaniel in support of his discrimination and retaliation claims for these two positions, the Court finds that McDaniel has not presented sufficient evidence here. In *Roberson v. Alltell Information Services*, the Fifth Circuit stated that, "[w]ithout more than timing allegations, and based on [defendant's] legitimate, nondiscriminatory reason in this case, summary judgment in favor of [defendant] [is] proper."[532] Likewise, the Fifth Circuit has held that summary judgment is proper when a plaintiff "has failed to even attempt to provide evidence to counter most of [defendant's] proffered reasons for his termination of [plaintiff]."[533] Accordingly, because McDaniel has failed to present sufficient evidence establishing that Amtrak did not select him for the position of Crew Base Manager or the position of Onboard Service Manager in retaliation for either of McDaniel's complaints of discrimination, the Court finds that summary judgment on both retaliation claims is proper.

---

[529] *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 655 (5th Cir. 2004); *see also McCoy v. City of Shreveport*, 492 F.3d 551, 561–62 (5th Cir. 2007).

[530] *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 685 (5th Cir. 2001) (citing *McMillan v. Rust College, Inc.*, 710 F.2d 1112, 1116–1117 (5th Cir. 1983))

[531] *Id.*

[532] *Roberson*, 373 F.3d at 656. *See also McCoy*, 492 F.3d at 561–62 ("McCoy's attempt to prove pretext simply by showing that the SPD decisionmakers knew of her complaints and took an adverse employment action shortly thereafter fails.").

[533] *Harvey*, 113 F. App'x at 631.

### d.    *Disparate Impact Age Discrimination Claim under the ADEA*

Finally, Amtrak argues that McDaniel's disparate impact age discrimination claim, *i.e.* McDaniel's claim that Amtrak's facially neutral employment policies adversely and unequally affected persons falling within a protected age class, fails as a matter of law.[534] Amtrak avers that McDaniel has not identified any facially neutral policy that had an adverse impact on employees protected by the ADEA, because, according to Amtrak, courts in the Fifth Circuit have held that it is not enough to claim a reduction in force ("RIF") in general caused a disparate impact.[535] Rather, Amtrak asserts that McDaniel must challenge a specific policy or process within the RIF.[536] Moreover, Amtrak argues that McDaniel presents no credible evidence of a disparate impact on employees protected by the ADEA, as his numbers lack the required statistical significance.[537] Amtrak asserts that averaging the ages of 19 employees impacted by the RIF "is woefully insufficient as evidence of a disparate impact because it does not show a *disparity* between how a policy impacted persons inside and outside of the protected class."[538]   Amtrak avers that McDaniel's attempt to compare the average ages of 19 employees who were terminated to the averages ages of the more than 1,500 employees that were not impacted by the RIF fails to have any statistical meaning.[539]

---

[534] Rec. Doc. 41 at 30 (citing *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977)).

[535] *Id.* at 31; Rec. Doc. 64 at 8 (citing *Leichihman v. Pickwick Int'l*, 814 F.2d 1263, 1263 n.5 (8th Cir. 1987); *Powell v. Dallas Morning News L.P.*, 776 F. Supp. 2d 240, 258–259 (N.D. Tex. 2011)).

[536] *Id.*

[537] Rec. Doc. 64 at 8 (citing *Moore v. Southwestern Bell Tele. Co.*, 593 F.2d 607, 608 (5th Cir. 1979)).

[538] Rec. Doc. 41 at 31–32 (citing *Munoz v. Orr*, 200 F.3d 291, 299 (5th Cir. 2000)).

[539] Rec. Doc. 64 at 9.

In response, McDaniel contends that Amtrak's facially-neutral policy was articulated in the "Declaration of Kathryn Huss," the Human Capital Business Partner in 2013, who detailed the elimination of nineteen positions during the 2013 RIF.[540] McDaniel argues that the policy does not explain why his Assistant Superintendent Position was eliminated or what new position would assume his previous responsibilities, and that there is "no true rationale" for why these positions were eliminated that led to "such an adverse impact on older employees."[541] Additionally, according to McDaniel, the statistical evidence is "simple and clear" because the average age of those holding the eliminated positions were 57.3 while the average age of the non-eliminated positions was 49.8.[542] McDaniel further contends that Amtrak has failed to point to reasonable factors other than age to justify why the particular positions impacted were eliminated.[543]In his "Summary of Relevant Facts," McDaniel points out that Amtrak changed its retirement plan after the reorganization, such that current employees under the age of 50 on July 1, 2015, are no longer entitled to certain retirement benefits.[544] McDaniel argues that by doing so, "Amtrak was able to reduce its costs by intentionally lowering the ages of its employees through the purportedly neutral reorganization."[545]

"[Disparate impact claims] involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and

---

[540] Rec. Doc. 52 at 15, 22.

[541] *Id.* at 23.

[542] *Id.*

[543] *Id.* at 23.

[544] *Id.* at 11.

[545] *Id.*

cannot be justified by business necessity."[546] These claims "focus on facially neutral employment practices that create such statistical disparities disadvantaging members of a protected group that they are 'functionally equivalent to intentional discrimination.'"[547] To establish a prima facie case of discrimination under a disparate impact theory, McDaniel must show: "(1) an identifiable, facially neutral personnel policy or practice; (2) a disparate effect on members of a protected class; and (3) a causal connection between the two."[548] The Supreme Court has stated that "a prima facie case of disparate-impact liability [is] essentially, a threshold showing of a significant statistical disparity, and nothing more."[549] Once the plaintiff carries his burden of establishing a prima facie disparate impact case, the burden of production and persuasion shifts to the defendant to identify a "reasonable factor other than age" to which the adverse impact is attributable.[550]

Here, the parties dispute whether McDaniel has satisfied the first prong of his disparate impact claim by identifying a facially neutral employment policy or practice. McDaniel alleges that Amtrak's facially neutral policy was articulated in the "Declaration of Kathryn Huss," the Human Capital Business Partner in 2013, who detailed the elimination of the 19 positions during the 2013 RIF.[551] In her Declaration, Huss averred that the reorganization eliminated 50 occupied

---

[546] *Stout v. Baxter Healthcare Corp.*, 282 F.3d 856, 860 (5th Cir. 2002) (quoting *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977)).

[547] *Munoz v. Orr*, 200 F.3d 291, 299–300 (5th Cir. 2000) (citing *Watson v. Fort Worth Bank and Trust,* 487 U.S. 977, 987 (1988)).

[548] *Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x 485, 492 (5th Cir. 2011) (quoting *McClain v. Lufkin Indus., Inc.,* 519 F.3d 264, 275–76 (5th Cir. 2008)).

[549] *Id.* (quoting *Ricci v. DeStefano*, 557 U.S. 557, 587 (2009)).

[550] *Meacham v. Knolls Atomic Power Lab.,* 554 U.S. 84, 100 (2008); *Cefalu v. Tangipahoa Par. Sch. Bd.*, No. 12-1380, 2013 WL 5329808, at *7 (E.D. La. Sept. 20, 2013); *Powell v. Dallas Morning News L.P.*, 776 F. Supp. 2d 240, 257–58 (N.D. Tex. 2011), *aff'd sub nom. Powell v. Dallas Morning News, LP*, 486 F. App'x 469 (5th Cir. 2012).

[551] Rec. Doc. 52 at 15, 22.

non-agreement positions in the Operations Department, including Superintendent and Assistant Superintendent positions "primarily in the Long Distance business line."[552]

McDaniel avers that pointing to Huss's Declaration is sufficient to satisfy the first prong of his disparate impact claim.[553] However, a plaintiff asserting a disparate impact claim under the ADEA must do more than "merely allege a disparate impact, *or point to a generalized policy* that leads to such an impact."[554] Rather, the plaintiff is "responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities."[555] For example, in *Smith v. City of Jackson, Miss.*, the Supreme Court held that merely pointing to a new pay plan that is less generous to older workers than it is to younger workers is insufficient to state a disparate impact claim, as the plaintiffs had not "identified any specific test, requirement, or practice *within the pay plan* that has an adverse impact on older workers."[556] The Court made clear that simply pointing to a disparate impact on workers or to a generalized policy creating such an impact cannot sustain a disparate impact claim.[557] The Court further noted that allowing a claim to go forward without identifying a specific practice being challenged could "result in employers being potentially liable for 'the myriad of innocent causes that may lead to statistical imbalances . . . .'"[558]

---

[552] Rec. Doc. 41-6 at 3.

[553] Rec. Doc. 52 at 22.

[554] *Meacham*, 554 U.S. at 100 (quotation marks and citations omitted) (emphasis added); *Powell*, 776 F. Supp. 2d at 257–58.

[555] *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 656 (1989) (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988)) (emphasis added); *Powell*, 776 F. Supp. 2d at 257–58.

[556] 544 U.S. 228, 241–42 (2005) (emphasis added).

[557] *Id.* (citing *Wards Cove*, 490 U.S. at 656).

[558] *Id.* (quoting *Wards Cove*, 490 U.S. at 657).

Other courts considering allegations that a reduction in force or layoff caused a disparate impact by age have similarly found that plaintiffs have failed to sufficiently identify a facially neutral employment policy.[559] For example, in *Powell v. Dallas Morning News L.P.*, a Northern District of Texas court found that an allegation that the selection process for a reduction in force created a disparate impact failed to state a disparate impact claim.[560] The court held that "Plaintiffs' purported discriminatory applications of the RIF policy are not facially neutral and are more properly considered as disparate treatment claims."[561] According to the court, the plaintiffs failed to identify a specific, measurable policy or practice within the selection process that created a statistical disparity based on age, as the "broad claim of undue subjectivity in the RIF termination process is not a proper basis for a disparate impact claim in an ADEA case."[562] The court's decision was affirmed by the Fifth Circuit, which held that the plaintiffs did not make out a prima facie disparate impact case under the ADEA.[563] Similarly, in *Cefalu v. Tangipahoa Parish School Board*, another section of the Eastern District of Louisiana found that a plaintiff's argument that

[559] *See, e.g.*, *Mustelier v. Equifax, Inc.*, No. CIV. 08-1008, 2009 WL 890468, at *6 (D.P.R. Mar. 25, 2009) (finding that a plaintiff fails to establish a prima facie disparate impact claim when he or she only alleges that older workers were overrepresented in a restructuring process, rather than identifying any facially neutral rule responsible for the disparity); *Oinonen v. TRX, Inc.*, No. 3:09–CV–1450, 2010 WL 396112, at *4–5 (N.D. Tex. Feb. 3, 2010) (rejecting a disparate impact claim because the plaintiff failed to identify a specific policy or practice within the layoff selection process that plaintiff alleged was responsible for purported statistical disparities); *White v. Am. Axle & Mfg., Inc.*, No. 05-CV-72741, 2006 WL 335710, at *6 (E.D. Mich. Feb. 14, 2006) (finding that pointing to layoffs and the procedures for selecting employees for layoffs is insufficient to identify a facially neutral policy as required to sustain a disparate impact claim); *Kourofsky v. Genencor Int'l, Inc.,* 459 F. Supp. 2d 206, 215 (W.D. N.Y. 2006) (finding that alleging that an involuntary reduction in force created a disparate impact against employees over the age of 50 fails to sufficiently identify a facially neutral policy to sustain such a claim); *Leidig v. Honeywell, Inc.*, 850 F. Supp. 796, 802 n.6 (D. Minn. 1994) (finding that a plaintiff failed to identify a specific employment practice when plaintiff only pointed to the reduction in force).

[560] *Powell v. Dallas Morning News L.P.*, 776 F. Supp. 2d 240, 259 (N.D. Tex. 2011), *aff'd sub nom. Powell v. Dallas Morning News, LP*, 486 F. App'x 469 (5th Cir. 2012).

[561] *Id.* at 260.

[562] *Id.* at 261.

[563] *Powell*, 486 F. App'x 469, at *1.

the defendant's reconstitution plan and subjective evaluation process for reassigning teachers caused a disparate impact failed to make out a prima facie case.[564] The court held that the plaintiff had not provided evidence that "any of the particular methods that the evaluation team used fell more harshly on faculty members of older age."[565] The court also found that alleging that the employer failed to provide age discrimination training to its evaluation team was also insufficient, as plaintiff was "merely pointing to a generalized policy of the [defendant] (or to the lack of such a policy), not a specific employment practice."[566]

Additionally, in *Leichihman v. Pickwick Int'l*, the Eighth Circuit held that a disparate impact claim could not be based on defendant's reduction in force plans, as it "was not implemented through some facially neutral procedure, such as a height and weight requirement or an aptitude test, but was conducted through a series of subjective decisions eliminating certain positions in order to cut costs."[567] The Eighth Circuit further stated that "[t]here existed no neutral policy, the impact of which could be measured. Thus, a disparate impact model provides an inappropriate vehicle for analysis."[568]

Here, McDaniel broadly points to the entirety of Amtrak's 2013 RIF, but fails to point to any particular policy, practice, or portion of the 2013 RIF that was responsible for creating the alleged disparate impact by age. As the Supreme Court has held, identifying a specific practice "is not a trivial burden."[569] By failing to identify the *specific* policy or practice that he is challenging,

---

[564] No. 12-1380, 2013 WL 5329808, at *7–8 (E.D. La. Sept. 20, 2013) (Barbier, J.).

[565] *Id.* at *7.

[566] *Id.*

[567] 814 F.2d 1263, 1270 n.5 (8th Cir. 1987).

[568] *Id.*

[569] *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 101–02 (2008).

the Court finds that McDaniel has not satisfied the first prong required to state a prima facie case for disparate impact claims.

The parties also dispute whether McDaniel has satisfied the second prong of his prima facie case by identifying a disparate effect on members of a protected class. A prima facie disparate impact case ordinarily "requires a showing of a *substantial statistical disparity* between protected and non-protected workers in regards to employment or promotion."[570] As Amtrak points out, courts have held that a claim premised on insignificant statistical evidence fail to state a prima facie disparate impact case.[571] However, even assuming that McDaniel has demonstrated that there was a statistically significant disparity caused by a facially neutral policy or practice, this only establishes McDaniel's prima facie claim, and the burden shifts to Amtrak to demonstrate that its policy was based on reasonable factors other than age.[572]

Here, McDaniel argues that Amtrak has not explained why his Assistant Superintendent Position was eliminated or what new position would assume his previous responsibilities, and that there is "no true rationale" for why these positions were eliminated that led to "such an adverse impact on older employees."[573] However, as stated in the "Declaration of Kathryn Huss," which McDaniel previously cited as establishing a facially neutral policy, Amtrak reorganized its Operations Department in 2013 "to create a structure that brings front-line, mechanical, engineering and transportation activities in line with Amtrak's strategic plan to run like a

---

[570] *Davis*, 448 F. App'x at 492 (quoting *Stout v. Baxter Healthcare Corp.*, 282 F.3d 856, 860 (5th Cir. 2002)) (emphasis added).

[571] *See, e.g.*, *Apsley v. Boeing Co.*, 691 F.3d 1184, 1206–07 (10th Cir. 2012) (finding that, although the employees' statistics revealed a "highly unlikely disparity in the treatment of older and younger workers," the disparity was, "in absolute numbers, very small," and thus did not amount to a "significant disparate impact" on older employees).

[572] *Smith v. City of Jackson, Miss.*, 544 U.S. 228, 241 (2005).

[573] *Id.* at 23.

business."[574] In her statement, Huss notes that the 2013 reorganization realigned the management structure "to create business line accountability, dissolve departmental silos and move decision-making and accountability closer to customers."[575] In order to do so, Huss contends that Amtrak created some new roles and eliminated or restructured existing roles to better accomplish its mission.[576] Huss further states that this included eliminating certain mid- to upper-level management positions in its Operations Department, including a number of Superintendent and Assistant Superintendent positions primarily in the Long Distance business line.[577] Huss specifically avers that this included McDaniel's former Assistant Superintendent position, which was eliminated "as a result of the realignment to a route based management organizational structure in the Long Distance business line."[578] Huss states that similar positions such as the Assistant Superintendent position in Washington, D.C. were not eliminated in the 2013 reorganization because the Northeast Corridor did not transition to a route based structure.[579]

Accordingly, the Court finds that, even assuming McDaniel has sufficiently stated a prima facie case for disparate impact based on age, Amtrak has articulated that such an impact was based on reasonable factors other than age. Contrary to McDaniel's contention, Amtrak has stated a legitimate rationale for its 2013 RIF, and has satisfied both its burdens of production and persuasion that the 2013 RIF was based on reasonable factors other than age.[580] In *Smith*, the

---

[574] Rec. Doc. 41-6 at 2.

[575] *Id.*

[576] *Id.* at 3.

[577] *Id.*

[578] *Id.*

[579] *Id.*

[580] *See Smith v. City of Jackson, Miss.*, 544 U.S. 228, 241 (2005); *Cefalu v. Tangipahoa Par. Sch. Bd.*, No. 12-1380, 2013 WL 5329808, at *7 (E.D. La. Sept. 20, 2013) (Barbier, J.) (also holding that a plaintiff failed to articulate a sufficient policy and that the defendant had articulated a sufficient reason other than age to rebut

Supreme Court held that a defendant's plan to raise the salaries of junior officers more than its senior officers was reasonable in light of the defendant's desire to make the positions more competitive with comparable offers in the market.[581] Here, Amtrak has offered similar reasons that the 2013 RIF was needed to improve Amtrak's operations and ensure that Amtrak operates more like a business, which  Amtrak pursued by making changes to its management structure.[582] Amtrak's evidence constitutes a valid defense to McDaniel's disparate impact claim, and McDaniel offers no evidence or argument that such factors were unreasonable or age-related.[583] Accordingly, like the Supreme Court held in *Smith*, this Court finds that "not only did [McDaniel] thus err by failing to identify the relevant practice, but it is also clear from the record that [Amtrak's] plan was based on reasonable factors other than age."[584] Thus, summary judgment on McDaniel's disparate impact claim is supported here.

## V. Conclusion

As discussed *supra*, the Court will not strike McDaniel's Statement of Disputed Material Facts as inconsistent with Local Rule 56.2, and thus will deny Amtrak's "Motion to Strike Plaintiff's Statement of Disputed Material Facts."[585] Second, the Court finds that McDaniel has

---

plaintiff's prima facie case). *See also Doyle v. City of Medford*, 512 F. App'x 680, 681 (9th Cir. 2013) (finding that evidence that the City's policy saved the City and its employees money constitutes a reasonable factor other than age); *Allen v. Sears Roebuck & Co.*, 803 F. Supp. 2d 690, 698 (E.D. Mich. 2011) (finding that a reasonable factor other than age includes reducing operating costs, and that eliminating paid time off and business expense reimbursement would support this goal).

[581] *Smith,* 544 U.S. at 242.

[582] *See* Rec. Doc. 41-6.

[583] *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 97 (2008); *Allen*, 803 F. Supp. 2d at 698.

[584] *Smith,* 544 U.S. at 241; *see Rollins v. Clear Creek Indep. Sch. Dist.*, No. 06-081, 2006 WL 3302538, at *5 (S.D. Tex. Nov. 13, 2006) ("In the instant case, even if Plaintiff were able to show a disparate impact on older workers due to the nonrenewal policy, her claim would fail because Defendant based its policy on a reasonable factor other than age.").

[585] Rec. Doc. 56.

failed to present sufficient evidence demonstrating there are genuine disputes of material fact regarding his disparate treatment, retaliation, and disparate impact claims under Title VII, the ADEA, and Louisiana state law. The Court finds that McDaniel affirmatively waived his claims based on six of the nine positions that he was not selected for, and thus summary judgment on these claims is proper.[586]

Additionally, the Court finds that McDaniel has failed to present sufficient evidence creating disputed material facts at issue that Amtrak's decision to not select McDaniel for the positions of Route Director, Crew Base Manager, and Onboard Service Manager was motivated by race, gender, and/or age, or for retaliation for engaging in a protected activity. In particular, McDaniel failed to present sufficient evidence that Amtrak's legitimate, nondiscriminatory or nonretaliatory reasons for not selecting McDaniel for those positions were pretextual, either by establishing that he was "clearly better qualified" for the position, that Amtrak's stated reasons are false or unworthy of credence, or that Amtrak was otherwise motivated by race, gender, and/or age considerations. McDaniel has also not presented sufficient evidence to create a genuine dispute of material fact that he was not selected for those positions in retaliation for filing complaints of discrimination, as McDaniel has not shown that Amtrak's stated reasons are pretextual or presented other evidence demonstrating that he was not selected for Crew Base Manager or Onboard Service Manager in retaliation for engaging in protected activity six months prior to the job posting. Finally, McDaniel has not presented sufficient evidence to create a genuine dispute of material fact on his disparate impact claim, as McDaniel has failed to make a prima facie case and Amtrak has presented sufficient evidence that the 2013 RIF was based on reasonable factors other than age. Accordingly,

---

[586] *See* Rec. Doc. 52 at 22.

IT IS HEREBY ORDERED that Amtrak's "Motion to Strike Plaintiff's Statement of Disputed Material Facts"[587] is DENIED.

IT IS FURTHER ORDERED that Amtrak's "Motion for Summary Judgment"[588] is GRANTED.

NEW ORLEANS, LOUISIANA, this  22nd  day of December, 2016.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[587] Rec. Doc. 56.

[588] Rec. Doc. 41.